RANDUSTRIAL CORPORATION, formerly known as Ranco Industrial Products Corporation, Plaintiffs,

v.

Edward B. DUNLAP, United Industrial Maintenance, Inc., Robert F. Klein and Bernard J. Berry, Defendants.

Civ. A. No. 66–479.

United States District Court, W.D. Pennsylvania.

Oct. 11, 1984.

Howard D. Schwartz, Pittsburgh, Pa., for plaintiffs.

James A. Lewis, Pittsburgh, Pa., for defendant, Edward B. Dunlap.

## OPINION

MARSH, District Judge.

This case is before us on the plaintiff's motion to punish for contempt. A hearing on said motion was held on September 10, 1985. Upon conclusion of said hearing, the court ordered both parties to file proposed findings of fact and conclusions of law. Also before the court is the defendant's motion to rescind or modify the court order dated May 19, 1966 which is the subject of plaintiff's motion to punish for contempt.

This litigation began with a complaint and motion for preliminary injunction filed on April 20, 1966 alleging a violation by Edward B. Dunlap (hereinafter Dunlap) of his sales representative agreement with Ranco Industrial Products Corporation now Randustrial Corporation (hereinafter Randustrial) and further alleging that Dunlap and others induced or attempted to induce employees of Randustrial to violate their sales representative agreements or employment agreements. A third count of the complaint involved an infringement of a copyright which is not an issue in the present case.

The original complaint and motion for preliminary injunction was not adjudicated on the merits. Instead, the parties settled the case by an agreement dated May 11, 1966 and presented a consent order which was signed by the court on May 19, 1966.

### Motion to Rescind or Modify Consent Order

We shall first address the defendant's motion to rescind or modify the consent order which shall be treated as a motion for relief from final judgment pursuant to Rule 60(b), Fed.R.Civ.P. The only grounds applicable to said relief are encompassed in Sections (5) and (6) of said rule.

This portion of the rule provides as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: ... (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it has been based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

We note that the standards for reopening a consent judgment are strict. *Philadelphia Welfare Rights Org'n v. Shapp*, 602 F.2d 1114, 1119 (3rd Cir.1979). For example, in *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3rd Cir.1977), the Third

Circuit Court of Appeals reversed the decision of a district court which vacated a consent judgment. In so doing the court stated:

"... it is settled that such relief is extraordinary and may be granted only upon a showing of 'exceptional circumstances.' (Citations omitted.) ... Thus a party seeking such relief must bear a heavy burden of showing circumstances so changed that 'dangers once substantial, have become attenuated to a shadow,' *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932), and that, absent such relief an 'extreme' and 'unexpected' hardship will result."

Similarly, in *United States Steel Corp. v. Fraternal Ass'n, Etc.*, 601 F.2d 1269, 1274 (3rd Cir.1979), the Court of Appeals vacated a district court decision modifying a consent injunction. In so doing the Court stated:

"And when, as in this case, the appellants made a free, calculated and deliberate choice to submit to an agreed upon decree rather than seek a more favorable litigated judgment, their burden under Rule 60(b) is perhaps even more formidable than had they litigated and lost."

We further note that this matter has been discussed by Professor Wright who comments:

"It is clear that a strong showing is required before an injunction or other prospective judgment will be modified. *Mere passage of time is not enough.*" (Citations omitted; emphasis supplied.) Wright, & Miller, Federal Practice and Procedure: Civil § 2863.

■ A review of the record does not reveal that defendant has sustained his burden to show "exceptional circumstances" for relief from this court's consent order of May 19, 1966. The record reflects that at the time of the original complaint, defendant's company, United Industrial Maintenance (hereinafter United), was competitive with Randustrial with respect to twenty-five percent (25%) of its business; that is, in the sale of industrial mainte-

nance supplies. Presently, Dunlap's new company, Consolidated Enterprises, is competitive with Randustrial with respect to twenty percent (20%) of its business. Although the consent order allowed Dunlap to compete with Randustrial after a period of three years, we use these facts merely to illustrate that there was little change from 1966 to the present in the percentage of competition between the two companies.

Since the requisite of showing "exceptional circumstances" to justify a modification of the consent order was not shown, defendant's motion to rescind or modify will be denied.

### Motion to Punish for Contempt

We turn next to the plaintiff's motion to punish for contempt to determine if the record reflects evidence to justify plaintiff's allegations that Paragraph 4(a) of the consent order has been violated by defendant.

Paragraph 4(a) of the consent order permanently enjoined Dunlap from:

"(a) Inducing or attempting to induce, either directly or indirectly, any present or former employee or employees of Ranco to break his, her or their contracts with Ranco, or to induce, direct or employ said persons in violation of his, her or their contracts with Ranco, to solicit customers or attempt to solicit customers of Ranco, or to act as sales agents or brokers or advisors or consultants to Dunlap, ... or to induce, employ or direct any such persons to divulge to Dunlap ... or any other persons any confidential information of Ranco, including customer lists, sales methods and inquiries from customers."

Edward Dunlap began work with Randustrial, formerly known as Ranco Industrial Products Corporation, in 1961 as a sales trainee. He subsequently became a sales representative with Randustrial and entered into a sales representative agreement which included a covenant not to compete with Randustrial for a period equivalent to the time he was employed by Ran-

dustrial but not more than three (3) years from the date he left Randustrial's employ. After he left Randustrial's employ in 1965, he formed United Industrial Maintenance Company with two other individuals. Both Randustrial and United were in the business of industrial maintenance and supplies. Twenty-five percent (25%) of United's business was in direct competition with Randustrial (sale of supplies) while seventy-five percent (75%) involved contract work involving hiring laborers to do the maintenance work for customers.

Subsequent to the formation of United, Randustrial filed suit against Dunlap, his business partner and United for, *inter alia*, violation of his sales representative agreement with respect to the covenant not to compete. As was stated above, that lawsuit was resolved by the consent order which has allegedly been violated some eighteen years after its issuance.

Dunlap complied with the provisions of the consent order prohibiting him from competing with Ranco for a period of three (3) years, and disbanded his company, United Industrial Maintenance. However, Randustrial now contends that Dunlap has violated the permanent conditions of that order and should, therefore, be found in contempt of said order. This contention arises out of the fact that Dunlap recently became associated in business with the former national sales manager of Randustrial, Thomas Zeller. The circumstances leading to this association will now be reviewed.

After the three-year period subsequent to the consent order of May 19, 1966 had passed, Dunlap formed Northern Chemical Company (hereinafter Northern) whose principal business was janitorial supplies. Northern was not competitive in any product lines with Randustrial. Dunlap was the president and principal stockholder of Northern. In the mid-1970's, Northern changed its name to Consolidated Enterprises, Inc. (hereinafter Consolidated), a company which did become competitive

with products sold by Randustrial with respect to twenty percent (20%) of its business. Dunlap is president of Consolidated and owns ninety percent (90%) of its stock.

Dunlap first met Thomas Zeller when he started working for Randustrial in 1961. Dunlap's next contact with Zeller was in 1983 when Zeller contacted him by phone concerning employment with Consolidated. Dunlap knew at the time of said phone conversation that Zeller had been employed by Randustrial for twenty-four (24) years, that he was a former sales representative, and that he had recently been promoted to the position of national sales manager for Randustrial. As a result of the phone conversation, Dunlap and Zeller had a face-to-face meeting in Pittsburgh, Pennsylvania. Dunlap's initial response to Zeller's calls was to remind Zeller that he had a sales representative agreement with Randustrial which included a non-competition clause. Dunlap reviewed this agreement with Zeller since he (Dunlap) was concerned about the non-competition clause being familiar with its provisions. The terms of the non-competition clause in Zeller's contract with Randustrial provide, *inter alia*, as follows:

"Section 7.2/Non-Competition—(a) During the period described in Paragraph (c) of this Section 7.2, Sales Representative:[1] (1) will not sell for, be employed by, be a representative of or be associated with, directly or indirectly, any person, firm, or entity manufacturing, distributing, selling, advertising or otherwise dealing in products competitive with Randustrial."

A "Specific Non-Competition" clause in Zeller's contract prohibited Zeller from being associated with, either directly or indirectly any firm or entity employing Edward R. Dunlap, and also prohibited association with Northern Chemical Company or any affiliate, successor or subsidiary of Northern for a period of three years from the date of his termination of employment with Randustrial.

---

1. The period of time with respect to Zeller is three (3) years in any territory where he actually represented Randustrial, and one (1) year in any other territory within the continental United States.

Dunlap felt the prohibitions in Zeller's contract and in particular the prohibition against employment with a competitor anywhere in the continental United States were unreasonable and too restrictive. Therefore, Dunlap proceeded to arrange employment for Zeller based on the assumption that a court would agree with his interpretation of the contract.

This was done by establishing Union Rubber Company (hereinafter Union), an Ohio Corporation, as a wholly-owned subsidiary of Consolidated. Zeller was made president of Union which had one other employee. Union was formed on June 17, 1983, two weeks after Zeller left the employ of Randustrial. Union sells products which are competitive with Randustrial and Consolidated. Zeller was directed not to sell in five states where he had recently represented Randustrial and was directed not to sell to any customer that he had business with or knowledge of as an employee of Randustrial. Nevertheless, approximately twelve (12) sales were made to Randustrial customers with a total value of $1,000.00 to $1,500.00.

■ Reviewing the above set of facts and circumstances, in light of our decision that the consent order should not be rescinded or modified at this time, we find ample evidence to conclude that Dunlap has violated the consent order. The violation has occurred by Dunlap's indirect inducement of Zeller to breach his sales representative agreement with Randustrial. In making the decision, we are not ruling that Zeller has violated his contract with Randustrial. Although the contract is before us for review, Mr. Zeller is not a party to this lawsuit. We are simply deciding that Dunlap, by forming a corporation to allow Zeller to compete with Randustrial, has violated Paragraph 4(a) of the consent order in that he (Dunlap) has indirectly induced a former employee of Randustrial to act as a sales agent to Dunlap. Although Zeller may be the president of Union, it is undisputed that he sells products in direct competition with Randustrial and has done so

within one (1) year of his termination of employment with Randustrial.

*Remedy for Contempt of Consent Order*

We now must decide what damages and/or further relief inures to Randustrial as a result of the violation by Dunlap of this court's consent order.

■ The plaintiff seeks compensatory damages, attorneys' fees and an order that defendant come into compliance with the court's order of May 19, 1966. As compensatory damages plaintiff wishes this court to impose liquidated damages against Dunlap as provided for in Zeller's contract with Randustrial. We do not consider this to be a proper measure of damages. Although Dunlap may have had knowledge of the provisions of Zeller's contract providing for damages for breach of said contract, we feel the only compensatory damages proven were the result of sales to Randustrial customers in the range of $1,000.00–$1,500.00. Accordingly, an appropriate order will be entered awarding said compensatory damages.

■ With respect to attorneys' fees, the court in a contempt proceeding may, in its discretion, award expenses, costs and fees to plaintiff. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3rd Cir.1970). Furthermore, the award is limited to the reasonable fees incurred by the party seeking relief and a basis for the award of said fees must appear in the record. *Lichtenstein*, supra at 1114 citing *Schauffler v. United Ass'n of Journeymen*, 246 F.2d 867 (3rd Cir.1957).

■ The evidence in the record is the testimony of William A. Randorf, president and chief executive officer of Randustrial. Mr. Randorf testified that he reviewed statements for legal fees as part of his responsibilities for Randustrial. Statements of attorneys' fees were presented as exhibits and Mr. Randorf testified he approved these statements for payment as being reasonable. However, we cannot avoid the fact that Mr. Randorf is a biased witness. Had an attorney who had experi-

ence in similar cases testified with respect to the reasonableness of the statements, we would not be reluctant in awarding the fees in full. We, therefore, shall grant plaintiff a part of the $15,000 plus fees which are sought. An appropriate order will be entered.

Having found the defendant in contempt of this court's consent order of May 19, 1966, an order will be entered requiring the defendant to come into compliance with said order.

The above shall constitute this court's findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P.