## RANCO INDUSTRIAL PRODUCTS CORPORATION

v.

Edward B. DUNLAP, United Industrial Maintenance, Inc., Robert F. Klein, and Bernard J. Berry.

Appeal of Edward B. DUNLAP, Appellant in No. 84–3720.

Appeal of RANDUSTRIAL CORPORATION, formerly known as Ranco Industrial Production Corporation, Appellant in No. 84–3729.

Nos. 84–3720, 84–3729.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) August 13, 1985.

Decided Nov. 13, 1985.

James A. Lewis, Rothman, Gordon, Foreman & Groudine, P.A., Pittsburgh, Pa., for Edward B. Dunlap.

Jane A. Lewis, Kevin C. Abbott, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Randustrial Corp.

Before ADAMS, GIBBONS and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge:

Edward B. Dunlap appeals from a district court order finding him in civil contempt of a consent decree and awarding Randustrial Corporation $1,500 in compensatory damages as well as $5,000 for attorneys' fees incurred in prosecuting the contempt. *Randustrial Corp. v. Dunlap*, 595 F.Supp. 873 (W.D.Pa.1984). Dunlap contends that the district court erred in holding him in contempt and that even if that ruling was correct the court erred in calculating damages. In any event, he asserts that attorneys' fees should not have been awarded for a contempt of court that was not willful. Randustrial cross-appeals, contending that the district court abused its discretion in failing to award the entire $15,038.08 claimed as an attorney fee. We will affirm in Dunlap's appeal but will vacate and remand the fee award.

## I.

### *Dunlap's Appeal*

Dunlap was formerly employed by Ranco Industrial Products Corporation, now Randustrial. While an employee, he entered into a sales representative agreement providing that he would not compete with Randustrial for a period equivalent to the time he was employed by the firm, but not to exceed three years.

In 1965, Dunlap left Randustrial and entered into a competing business. Randustrial sued in the United States District Court for the Western District of Pennsylvania to enjoin Dunlap from breaching the sales representative agreement and from engaging in unfair competition. That suit was resolved by a consent decree, providing in relevant part that Dunlap is permanently enjoined from

"[i]nducing or attempting to induce, either directly or indirectly, any present or former employee or employees of Ranco to break his, her or their contracts with Ranco, or to induce, direct or employ said persons in violation of his, her or their contracts with Ranco, to solicit customers or attempt to solicit customers of Ranco, or to act as sales agents or brokers or advisors or consultants to Dunlap, ... or to induce, employ or direct any such persons to divulge to Dunlap ... or any other persons any confidential information of Ranco, including customer lists, sales methods, and inquiries from customers."

Some years after entry of the consent decree, Dunlap formed Northern Chemical Company, whose name was later changed to Consolidated Enterprises, Inc. About twenty percent of Consolidated's business is competitive with that of Randustrial.

In 1983, Thomas Zeller, the national sales manager for Randustrial, approached Dunlap about possible employment with Consolidated. At the time, Zeller was under an employment contract with Randustrial that provided: "During the period described in Paragraph (c) of this Section 7.2, Sales Representative will not sell for, be employed by, be a representative of or be associated with, directly or indirectly, any person, firm, or entity manufacturing, distributing, selling, advertising or otherwise dealing in products competitive with Randustrial." *Randustrial*, 595 F.Supp. at 876.

In addition to this general negative post-employment covenant, the contract prohibited Zeller from being associated directly or indirectly with any firm employing Dunlap for three years after the termination of his employment. Zeller showed this contract to Dunlap. Notwithstanding the restrictive

provisions of both the Zeller-Randustrial contract and the consent decree, Dunlap decided to arrange employment for Zeller.

Two weeks after Zeller terminated his relationship with Randustrial, Dunlap caused Consolidated to form a wholly-owned subsidiary, Union Rubber Company, and Zeller became its president. Union's products were competitive with those of Randustrial. In addition, Consolidated performed Union's clerical functions and sent out its orders and invoices. Zeller was instructed not to sell in the five states in which he recently had represented Randustrial and was specifically directed not to sell to any customers with whom he had done business on behalf of Randustrial. Nevertheless, Union made twelve sales to former Randustrial customers.

Zeller's efforts prompted Randustrial to sue Zeller in the Ohio state court for breach of the Zeller-Randustrial employment contract. In the course of that litigation, Randustrial learned of Zeller's relationship with Dunlap. Randustrial promptly filed this contempt proceeding in federal court, alleging violation of the consent decree.

In defense, Dunlap asked the district court to modify the consent decree. After an evidentiary hearing, the court refused Dunlap's request and held him in civil contempt. In denying the motion to modify the consent decree, the district court held that Dunlap had failed to show such exceptional circumstances as would warrant relief from a judgment under Fed.R.Civ.P. 60(b). *See, e.g., Philadelphia Welfare Rights Org. v. Shapp*, 602 F.2d 1114, 1119 (3d Cir.1979); *United States Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1274 (3d Cir.1979); *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir.1977). Dunlap did not appeal that ruling.

The court found that the consent order had been violated by Dunlap's indirect inducement of Zeller to breach his sales representative agreement with Randustrial. However, because Zeller was not a party to this suit, the court did not determine whether he had, in fact, breached his contract with Randustrial.

"We are simply deciding that Dunlap, by forming a corporation to allow Zeller to compete with Randustrial, has violated Paragraph 4(a) of the consent order in that he (Dunlap) has indirectly induced a former employee of Randustrial to act as a sales agent to Dunlap. Although Zeller may be the president of Union, it is undisputed that he sells products in direct competition with Randustrial and has done so within one (1) year of his termination of employment with Randustrial."

595 F.Supp. at 877.

■ The district court's finding that Dunlap induced Zeller to act as a sales agent for Dunlap·is not clearly erroneous. Fed.R.Civ.P. 52(a). That determination places Dunlap squarely in violation of the provision of the consent decree. Thus, we conclude that the district court properly held Dunlap in contempt.

Dunlap urges, however, that because Zeller-Randustrial contract is somewhat ambiguous he should not be held in contempt for inducing its breach. The short answer to this contention is that the finding of contempt does not depend on whether Zeller's contract was breached but on Dunlap's violation of the unambiguous provision in the consent decree which prohibits him from inducing Randustrial sales agents to work for him.

■ Dunlap also appeals the district court's calculation of damages. At the contempt proceedings, Randustrial sought the liquidated damages specified in its contract with Zeller. The court refused to impose that measure of damages, and awarded "only the compensatory damages proven [as] ... the result of sales to Randustrial customers in the range of $1,000.00–$1,500.00." *Randustrial*, 595 F.Supp. at 877. Dunlap contends that the court's finding as to the amount of Randustrial's loss is not supported by record evidence. He argues that his testimony fixing the amount of sales made by Zeller to Randustrial customers at $1,000 to $1,500 was based on

gross sales, not profit. Although arguably ambiguous, Dunlap's testimony about those sales can be understood as the district court viewed it. Therefore, we conclude that the court's damage calculation is not clearly erroneous.

Finally, Dunlap contends that Randustrial should not have been awarded attorneys' fees because his contempt was not willful. In advancing this contention, he relies on a footnote reference in *International Bhd. of Teamsters v. Western Pennsylvania Motor Carriers Ass'n.*, 660 F.2d 76, 84 n. 13 (3d Cir.1981), in which this court reserved the question whether attorneys' fees may be awarded when the contemnor's conduct is not willfully disobedient of a court's order. *But see Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania*, 533 F.Supp. 869, 880 (E.D.Pa.) *appealed on other grounds and aff'd*, 674 F.2d 976 (3d Cir.), *cert. denied*, 459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 1400 (1982). *Cf. Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 272 (5th Cir.1977).

■ Dunlap voluntarily entered into the consent decree in 1966. He has not appealed the district court's refusal to vacate that order. He knew the terms of the consent decree, and unquestionably had the ability to comply. He was aware that Zeller was employed by Randustrial in a sales capacity. Through Consolidated, he formed Union as a means for generating sales by Zeller in the interest of Dunlap's own business. These facts found by the trial court establish, as a matter of law, that Dunlap willfully violated the consent decree.

■ We have no reason in this case to resolve the issue reserved in the *Western Pennsylvania Motor Carriers* footnote. Attorneys' fees and expenses certainly may be awarded for the prosecution of a willful civil contempt. *Lichtenstein v. Lichtenstein*, 425 F.2d 1111 (3d Cir.1970); *Schaufler v. United Ass'n. of Journeymen*, 246 F.2d 867 (3d Cir.1957). *See also Alyeska Pipeline Service Co. v. Wilderness Soc.*, 421 U.S. 240, 258, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), ("a court may assess attorneys' fees for the 'willful disobedience of a court order ... as part of the fine to be levied on the defendant.' ").

## II.

### *Randustrial's Appeal*

Randustrial contends that the district court erred in awarding it only $5,000 in attorneys' fees. At trial, William Randorf, president of Randustrial, identified statements for legal services, totalling $15,033.08. He testified that in his opinion the fees were reasonable and that they had or would be paid.

The statements contained itemized accounts identifying the names of the attorneys who worked on the case, the number of hours of work performed, and the nature of the services. Hourly rates ranging up to $165 were specified. Randorf testified that he had reviewed the invoices and was satisfied that all charges were for items relating to the Dunlap matter.

On cross-examination, however, Randorf was unable to explain an entry for correspondence referring to the fictitious name registration of the Fashion Institute of Atlanta. He also conceded that some of the expenses listed in the bill represented charges for his own hotel rooms and meals while in Pittsburgh in connection with the litigation. Randorf was questioned about the amount of time logged by his attorneys in taking the defendant's deposition and whether more than one of his lawyers had participated in the interrogation.

During his testimony, Randorf agreed with the statement of the trial judge that it is often difficult to determine the reasonableness of attorneys' fees. The witness said "there have been many times when I feel that a bill looks to me as a layman, to be unreasonable." In those instances, Randorf stated, "I will go to the attorney and discuss the bill with him." He acknowledged that such meetings did not always resolve the problem.

In reaching its decision, the court referred to Randorf's testimony that the fees

were reasonable, but stated "we cannot avoid the fact that Mr. Randorf is a biased witness. Had an attorney who had experience in similar cases testified with respect to the reasonableness of the statements, we would not be reluctant in awarding the fees in full. We therefore shall grant plaintiff a part of the $15,000 plus fees which are sought." *Randustrial,* 595 F.Supp. at 877–78.

■ Both parties agree that expert testimony is not required to establish the reasonableness of attorneys' fees. In *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 169 (3d Cir.1973), we said: "A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys." For this reason, the expert assistance that might be necessary when assessing the reasonableness of charges by other professionals is not required in determining reasonable attorneys' fees.

We do not find the district judge's opinion inconsistent with this principle. The court noted the bias of the witness and the absence of lawyer testimony. These statements do not indicate a lack of familiarity with the theory that expert testimony is not required; rather, they show the court's process of assessing the quality of the evidence actually presented on the issue of reasonableness.

■ Randustrial had the burden of proving its entitlement to damages, and where attorneys' fees are included in the amount claimed, there must be "some indication of record as to the reasonableness" of the fee before an award can be made. *Lichtenstein,* 425 F.2d at 1114. Because Randorf's testimony was the only proof of reasonableness offered, the trial judge had a duty to examine the credibility and weight of that evidence in determining the extent to which Randustrial had met its burden.

As we observed in *Ursic v. Bethlehem Mines,* 719 F.2d 670, 676 (3d Cir.1983), the setting of a reasonable attorney's fee "suggests a twin inquiry . . . a reasonable hourly rate *and* a determination as to whether it was reasonable to expend the number of hours in a particular case." In *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), the Supreme Court stated that the district court should exclude "hours that were not 'reasonably expended.' . . . Cases may be overstaffed, and the skill and experience of lawyers vary widely."

In this case, the evidence presented did not assist the court in determining the customary charges in similar cases. As a layman, Randorf could not be expected to be familiar with the amount of work required, nor would he know whether the legal issues were complex or relatively simple. Furthermore, he could not determine whether more than one lawyer was necessary to take a deposition or the extent to which internal office conferences between lawyers were required. In the absence of such evidentiary assistance, the district judge relied on his own experience as discussed in *Lindy* and arrived at a sum which he obviously believed to be reasonable on the state of the record before him.

We have emphasized on numerous occasions that determination of the reasonableness of a fee is a matter within the discretion of the district court. *See Ursic v. Bethlehem Mines,* 719 F.2d at 675. This discretion was explained by the Supreme Court in *Hensley v. Eckerhart,* as "appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." 461 U.S. at 437, 103 S.Ct. at 1941.

■ Nevertheless, careful appellate review requires that the district court explain on the record the basis for its calculation. *Id.* We find the court's memorandum here to be less than necessary for us properly to discharge our reviewing function. Therefore, we will remand so that the district court may explain the process it used to determine a reasonable fee.

The dissent suggests that this case is governed by *Cunningham v. McKeesport*, 753 F.2d 262 (3d Cir.1985), but we are unable to agree. In that case, there was no evidentiary hearing in the district court. The defendants did not file affidavits in opposition to the petition for fees, nor did they seek an opportunity to cross-examine opposing counsel. The attorney's affidavit was uncontroverted and was prepared by a lawyer, not a layman. Presented with such a record, the panel found no occasion for the trial judge to question the reliability of the affidavit and held that the district court erred in reducing the amount requested.

■ By contrast, in the case at hand the district court held an evidentiary hearing, and the trial judge was required to evaluate the testimony. Thus, the ordinary rules of trial procedure must be followed. As we said in *NBO Industries Treadway Companies, Inc. v. Brunswick Corp.*, 523 F.2d 262, 277 (3d Cir.1975), *rev'd on other grounds sum. nom., Brunswick v. Puelbo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977), "it is clear that a trier of fact is at liberty within the bounds of reason to reject in whole or in part the uncontradicted testimony of a witness which does not convince the trier of its merit. This rule applies on the issue of damages as on any factual issue." To which we now add "including attorneys' fees." The trial judge was not bound to accept either Randorf's testimony or the invoices which were put in issue. Accordingly, *Cunningham* does not control the disposition of this case.[1]

### III.

The judgment holding Dunlap in contempt, assessing $1,500 in compensatory damages, and holding Dunlap liable for attorneys' fees will be affirmed. The judgment awarding $5,000 in attorneys' fees to Randustrial will be vacated, and that matter will be remanded for further proceedings consistent with this opinion.

GIBBONS, Circuit Judge, dissenting:

*Randustrial's Appeal*

The issue presented in this portion of the appeal is whether the district court erred in awarding Randustrial only $5,000 in attorneys' fees. Randustrial had requested that the court award it $15,033.08 for attorneys' fees and expenses incurred in the prosecution of the contempt.

To determine whether to award attorneys' fees to Randustrial, the district court held an evidentiary hearing. The only witness to present evidence on the issue of attorneys' fees was William Randorf, President of Randustrial. Randorf testified that as of August 31, 1984, Randustrial had incurred legal fees and expenses in the amount of $15,033.08. This testimony was supported by the introduction into evidence of all the monthly statements for professional services submitted by Randustrial's counsel. These billing records were quite detailed. Each statement contained an itemized account of the fees and expenses for the period covered. They identified each attorney who worked on the matter, the number of hours worked, the nature of the services performed, and the hourly rate charged. The hourly rates ranged from $45.00 to $165.00 per hour.

In addition, Randorf testified that he had reviewed and authorized the payment of each of the statements, that the fees requested were reasonable and that they had been or would be paid. He explained that Randustrial requires counsel to submit detailed billing statements and that he reviews all legal bills submitted to Randustrial. Joint Appendix 86. He testified that

---

1. The majority continues to stand by the position expressed in Judge Adams' statement that courts should measure attorney's fees at least in part on the basis of the size of the underlying monetary dispute. *Cunningham*, 753 F.2d at 270 (statement sur denial of petition for rehearing). This issue is presently before the Supreme Court in *Rivera v. City of Riverside*, 763 F.2d 1580 (9th Cir.1985), *cert. granted*, —— U.S. ——, 106 S.Ct. 244, 88 L.Ed.2d 253 (1985). While *Cunningham* would not preclude review of an attorney's fee award for disproportionality, the parties here did not address this issue, and given our disposition there is no need to resolve it at this time.

he has dealt with a number of law firms, and that he evaluates their bills based on the work that was done and his own experience. Joint Appendix 90. He further stated that on those occasions when he believed a bill to be unreasonable, he would go to the attorneys and discuss the bill with them. Joint Appendix 92.

The only attempt that was made to challenge the evidence presented by Randustrial was Dunlap's cross-examination of Randorf. Dunlap did not challenge the hourly billing rates directly, nor did he introduce testimony or affidavits indicating that the expenditure of hours or the billing rates were unreasonable. Dunlap limited his challenge to the fee application to cross-examining Randorf about three minor items in the billing statements. First, Dunlap's counsel interrogated Randorf about an entry referring to the fictitious name registration of the Fashion Institute of Atlanta. Joint Appendix 100. Randorf responded that he had questioned his attorneys about the matter and that they had explained that they had inquired into corporate registrations in various states to determine the full extent of Dunlap's operations. Joint Appendix 100–02. Second, Dunlap's counsel inquired about some of the expenses listed in the bill for Randorf's meals and lodging during the hearing. Randorf responded that his attorneys had paid those expenses, and that he believed they were compensable. Joint Appendix 105. Third, Dunlap's counsel questioned Randorf about the charges incurred for the taking of Dunlap's deposition. Randorf explained that two lawyers represented Randustrial and that Randustrial was charged for their time. Randorf also explained that Randustrial was billed for four hours, although the actual deposition took only one to two, to account for the total time Randustrial personnel spent with their attorneys that morning. Joint Appendix 103.

The district court, upon reviewing the evidentiary record, ruled that it would grant Randustrial only a portion of the requested attorneys' fees—$5,000. The sole reason advanced by the district court for cutting the fee request from $15,033.08 to $5,000 was that Randorf's characterization of the bill as reasonable could not be credited because he was a biased witness. Thus, the district court did not question the evidence on the number of hours worked, nor the billing rate charged—rather, the more than ten thousand dollar reduction was made on the basis that Randorf's statement that the bills were reasonable was not credible.

The Third Circuit first articulated the standards for the computation of fee awards in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973). *See also In re Fine Paper Antitrust Litigation*, 751 F.2d 562 (3d Cir.1984). First, the court must ascertain the number of hours worked by the attorneys on each aspect of the case. 487 F.2d at 167. Second, the court must multiply the number of hours worked by a reasonable hourly rate. *Id.* The reasonable hourly rate generally is reflected in the attorneys' normal billing rate. *Id.* The resulting numerical figure is "the lodestar" of the court's fee determination, and constitutes the only reasonably objective basis for fixing a fee award. *Id.* at 167–68. The court then may adjust the lodestar amount either up or down by taking into account the probability of success and the quality of the attorneys' work. *Id.* at 168.

In attorneys' fees cases the trial court has discretion in fixing a fee. The judge, however, must set forth as specifically as possible the facts that support the fee award. *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir.1983); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973). *See also Hensley v. Eckerhart*, 103 S.Ct. 1933 (1983). Moreover, a court cannot make an adjustment in the lodestar figure without articulating the *factual* or evidentiary basis for the adjustment. *See Prandini v. National Tea Co.*, 585 F.2d 47, 52 (3rd Cir.1978); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 169 (3d Cir.1973). Where there is no evidence to support an adjustment in the

lodestar, "we may disturb the district court's findings because sufficiency of the evidence is a matter of law subject to plenary review." *Ursic*, 719 F.2d at 674–75.

In this case, the district court seemingly accepted the lodestar calculation of $15,-033.08 since the court did not dispute the number of hours logged and the billing rates submitted by Randustrial's counsel. Indeed these figures represented the only factual evidence before the district court. Instead, the court discredited Randorf's characterization of the overall fee as reasonable, and from this apparently concluded that, on the basis of the evidentiary record, less than one-third of the requested sum was reasonable. This ruling constituted legal error. From the record it is clear that there is no evidentiary basis for this ruling. *See Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir.1985). No facts or figures support an award of $5,000, or any award less than the lodestar amount. The mere fact that the district court considered Randorf to be a biased witness does not negate the weight of the uncontested factual evidence. The only evidence is that the witness was regularly in the market for attorneys' fees, and, before knowing that his company would prevail in the contempt proceeding, made a market decision that the fees were reasonable and would be paid. The very object of the lodestar determination is to establish a market rate. *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). We have noted in other contexts that where there is no *factual* basis upon which an adjudicator rejects a witness's testimony, the testimony stands unrebutted. *Kent v. Schweiker*, 710 F.2d 110 (3d Cir.1983); *Smith v. Califano*, 637 F.2d 968 (3d Cir.1981). Although deference must be given to credibility judgments, they alone cannot carry the day. Accordingly, the district court's one reference to the fact that the authenticating witness was biased is an insufficient basis for disregarding the only factual evidence in the case on reasonableness of a fee, negotiated before the litigation over fees, in the marketplace.

Because there is no evidentiary basis for the trial court's decision, I would hold that the trial court erred in reducing the lodestar amount from $15,033.08 to $5,000. In addition, because there is no evidence in the record of, and because Dunlap made no attempt to establish, a factual basis for an award of attorneys' fees in any lesser amount, an award of anything but the requested amount would be clearly erroneous. Therefore, I would remand the case to the district court with instructions to enter an attorneys' fee award in the amount of $15,033.08. The majority's remand suggests that on this record a reduction in the amount established in the marketplace would be permissible. Clearly it would be only for those members of the court who continue to be hostile to the principle that attorneys' fees should be awarded against wrongdoers. Whatever may be said for the American Rule in other contexts, it has no place, in my judgment, in cases in which parties having the benefit of an injunction must pay market rates to attorneys in order to vindicate the court's authority.