719 F.2d 670
 4 Employee Benefits Ca 2297, 14 Fed. R. Evid.
Serv. 395
William B. URSIC, Appellee,
v.
BETHLEHEM MINES, a subsidiary of Bethlehem Steel
Corporation; the Pension Plan of Bethlehem Steel
Corporation and Subsidiary Companies;
and D.W. Kempken, Plan
Administrator, Appellants.
 Nos. 83-5155, 83-5242.
 United States Court of Appeals,
Third Circuit.
 Submitted Pursuant to Third Circuit
Rule 12(6) on Aug. 12, 1983.
 Decided Oct. 19, 1983.
 
 Carl H. Hellerstedt, Jr., Joseph Mack, III, Richard R. Riese, Brian J. Dougherty, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellants.
 Stanford A. Segal, Gatz, Cohen, Segal & Koerner, Pittsburgh, Pa., for appellee.
 Before ALDISERT and WEIS, Circuit Judges, and RE, Chief Judge.*
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In this appeal we determine that the district court, 556 F.Supp. 571, properly chose to award an attorney's fee to the prevailing plaintiff in an ERISA case. However, we conclude that, although counsel was effective and competent, the nature of the factual and legal issues litigated did not justify an amount beyond the fee "lodestar" described in our precedents reviewed in this opinion.
 
 
 2
 William Ursic brought suit under section 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Sec. 1140 (1976), to recover past and future pension benefits. He alleged that Bethlehem Mines illegally discharged him to deprive him of pension rights. After a three-day bench trial, the district court accepted the plaintiff's position and concluded that the employer had violated ERISA. Following a brief post-trial hearing, the court awarded counsel fees in the amount of $20,200.00 and expenses of $1,130.87. Defendants, including the pension plan and its administrator, appeal contending that the district court erred both in its determination on the merits and in its award of an attorney's fee.
 
 
 3
 Bethlehem terminated plaintiff, a coal mine foreman, after twenty-nine and one-half years of employment and at a time when he needed only six months to qualify for a substantial pension. The reason Bethlehem gave for the discharge was that plaintiff violated company policy by borrowing, without permission, mining tools worth about $400.00. He contended, however, that the real reason for the discharge was to prevent him from receiving his pension. Ursic's work record had been good, he had been highly regarded by his superiors, and Bethlehem had tolerated tool borrowing by company employees until shortly before this incident.
 
 
 4
 The district court's legal conclusion that Bethlehem violated ERISA followed from the factual finding that the employer's asserted reason for the discharge was pretextual, and the real reason was to prevent Ursic from drawing his pension. The finding was based on evidence that plaintiff was an excellent employee, defendants were interested in reducing their pension obligations, discharge was harsh punishment for unauthorized borrowing, and imposition of this sanction on Ursic was discriminatory.
 
 
 5
 We conclude that the findings of fact were supported by the evidence and not clearly erroneous. See Krasnov v. Dinan, 465 F.2d 1298 (3d Cir.1972). We are also persuaded that the trial court did not err in its legal conclusions. Accordingly, we affirm the judgment on the ERISA claim.
 
 
 6
 We come to a different conclusion, however, with respect to the attorney's fee award. Defendants present us with two contentions: that the district court erred in allowing counsel fees to plaintiff, and, alternatively, that if an award is permissible, it was excessive in the circumstances here. The alternative argument does not challenge the allowance of $1,130.87 in expenses and we will not disturb that amount.I
 
 
 7
 Section 502(g)(1) of ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," 29 U.S.C. Sec. 1132(g)(1) (Supp. V 1981), but does not automatically mandate an award to a prevailing party. See Iron Workers Local No. 272 v. Bowen, 624 F.2d 1255, 1265 (5th Cir.1980). In determining whether to make any award of fees under ERISA, courts have considered five policy factors:
 
 
 8
 (1) the offending parties' culpability or bad faith;
 
 
 9
 (2) the ability of the offending parties to satisfy an award of attorneys' fees;
 
 
 10
 (3) the deterent effect of an award of attorneys' fees against the offending parties;
 
 
 11
 (4) the benefit conferred on members of the pension plan as a whole; and
 
 
 12
 (5) the relative merits of the parties' position.
 
 
 13
 See Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir.1980); Iron Workers Local 272 v. Bowen, 624 F.2d at 1266; Eaves v. Penn, 587 F.2d 453, 465 (10th Cir.1978). In light of the foregoing factors, we conclude that the district court did not err in allowing an attorney's fee. We now turn to the amount awarded.
 
 II
 
 14
 The district court granted plaintiff counsel's request for a lodestar of $10,200.00 (102 hours of work at $100.00 per hour) and for a $10,000.00 bonus based on the quality of work performed ($5,000) as well as the contingent nature of the case ($5,000.00). Defendants did not contest the reasonableness of the lodestar and challenged only the bonus.
 
 
 15
 Although a trial court has broad discretion in fixing a fee, we require some explanation of the decision. A "judge should set forth as specifically as possible the facts that support his [fee award]." Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 169 (3d Cir.1973) (Lindy I ). See also Hensley v. Eckerhart, --- U.S. ----, ----, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).
 
 
 16
 In this case, we do not find an adequate explanation for the addition to the lodestar. In arriving at its decision to award a nearly 100 per cent bonus, the district court apparently accepted without question the amount stated in the plaintiff's fee petition. Neither the court nor the petition set forth any facts or rationale to support the bonus. The court did comment that at first it viewed the case as "almost frivolous," and only on further consideration did it become convinced that there was merit in the plaintiff's contention. But beyond this, no specific findings on either the contingent nature of the case or the quality of the work performed were made.
 
 
 17
 Allowing a bonus because of contingency is a means of rewarding counsel for accepting and prevailing in a case that, at the outset, had a low probability of success on the merits. See Lindy I, 487 F.2d at 168. But as we cautioned in Prandini v. National Tea Co., 557 F.2d 1015, 1020 (3d Cir.1977) (Prandini I ), the emphasis given to this factor depends in some degree on whether the fee is being paid from a common fund or by virtue of a statute. Where, as in this case, the award is statutory, the assessment of a counsel fee is to some extent a penalty for violating the law. From the defendant's standpoint, then, it is inconsistent to increase the fee when the defendant's liability was doubtful, but reduce it when the violation was flagrant and easily proved. The contingency factor loses its legitimacy when the penalty imposed on the party at fault is in inverse proportion to his culpability. See Prandini I, 557 F.2d at 1020; Hughes v. Repko, 578 F.2d 483, 491 (3d Cir.1978) (Garth, J., concurring); cf. Merola v. Atlantic Richfield Co., 515 F.2d 165 (3d Cir.1975).
 
 
 18
 Even if viewed from the plaintiff's perspective, the contingency risks reflected by large outlays of time and money were not present here. Nor was this a situation where recovery appeared to be highly questionable. Basic equities seemed to favor plaintiff who was discharged only six months before his pension eligibility vested. The scenario indicated a substantial, rather than a marginal, hope for success.
 
 
 19
 An increase based on the quality of work performed rewards counsel for exceptional work in a complex case culminating in an outstanding result. See Lindy Brothers, Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 114-15 (3d Cir.1976) (in banc ) (Lindy II ). Here the facts were not complicated, and the legal problems not difficult. The case was heard non-jury and required only three trial days of unexceptional length. Investigation of the facts, apparently performed solely by counsel at his usual hourly rate for legal services,[1] did not consume an inordinate amount of time. We do not find circumstances here that justify an additional award for the quality of work performed.
 
 
 20
 In disallowing the bonus, we do not demean counsel's ability. Indeed, the quality of counsel's services is reflected in the $100.00 hourly rate. We take judicial notice that in the Western District of Pennsylvania this amount reflects a fee charged by able and experienced counsel. It is self-evident that a high hourly rate presumes high quality work. To augment the lodestar on the basis of a "quality" factor, counsel must demonstrate either service or a result of an exceptional nature. As we stated in Silberman v. Bogle, 683 F.2d 62, 64 (3d Cir.1982):
 
 
 21
 "Such an increase or decrease is intended to take into account only an unusual degree of skill, superior or inferior, exhibited by counsel in the specific case before the court. The general quality of the attorney's practice and reputation is not to be considered in setting this factor, but enters instead into the determination of the reasonable hourly rate."
 
 
 22
 The record simply does not contain the substance needed to support the award of any bonus. Accordingly, we hold that the fee award in this case must be limited to the amount of the uncontested lodestar.
 
 III
 
 23
 Because this court has seen a continuing and disturbing increase in appeals from attorney's fee awards generally,[2] we fear the guiding precepts may be misapprehended. We reaffirm the principle that the discretion to set attorney's fees is allocated to the district courts and not to the courts of appeals. Even when a district court judgment is vacated by this court and remanded for further proceedings, see, e.g., Danny Kresky Enterprises Corp. v. Magid, 716 F.2d 215 (3d Cir.1983),[3] it is the district court, and not this court, which possesses the authority to exercise fee setting discretion.
 
 
 24
 In the case at hand, legal error occurred because there was no evidence to support the increase to the lodestar amount. We may disturb the fee determination because sufficiency of evidence is a matter of law subject to plenary review, and thus our action does not amount to the substitution of our discretion for that of the district court. We affirm the basic policy, founded in statute and set forth in Lindy I and Lindy II, that it is the discretion of the district court, and not that of the court of appeals, that controls. We cannot emphasize too strongly this allocation of jurisprudential competence.
 
 
 25
 To avoid any misreading of the decision in Danny Kresky Enterprises Corp. v. Magid, we emphasize that the Lindy rules retain their vitality in this judicial circuit. Absent error of law, determination of the reasonableness of the fee is for the district court--both in the original instance and on remand from this court. The Supreme Court has emphasized this point, stating that "the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." Hensley v. Eckerhart, --- U.S. at ----, 103 S.Ct. at 1941.
 
 We expanded on this concept in Lindy II:
 
 26
 " 'Discretion ... is abused when the judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' [Citing cases.] Thus, one may attack an exercise of discretion as 'irrational'. One seeking to establish such an abuse of discretion, however, assumes a heavy burden. [Citation omitted.] Lindy I and Merola I both emphasize that the appellate court may also find an abuse, or more accurately a 'misuse', of discretion where the trial court utilizes improper standards or procedures in determining fees. Lindy I, supra, 487 F.2d at 166; [Merola v. Atlantic Richfield Co. ] Merola I, supra, 493 F.2d at 295 [3rd Cir.1974]. Similarly, a clearly erroneous finding of fact may require reversal. Ibid.
 
 
 27
 Stated negatively, the appellate court may not upset a trial court's exercise of discretion on the basis of a visceral disagreement with the lower court's decision.... In sum, '[i]f the district court has applied the correct criteria to the facts of the case, then, it is fair to say that we will defer to its exercise of discretion.' [Citations omitted.]"
 
 
 28
 Lindy II, 540 F.2d at 115-16. To interpret Kresky as beckoning any retreat from our usual deference is to place a gloss on that case not intended by this court.
 
 
 29
 Nevertheless, the district court must abide by the appropriate standards and include some explanation to allow for careful appellate review. The requirement of an explanation for the basis of a fee award was established in Lindy I. Although this court has been faced with a plethora of cases since that time, the fundamental principle has remained constant. We require that district courts, in applying the proper standards, set forth the specific reasons underlying the award--what the Supreme Court has described as the need to "provide a concise but clear explanation of its reasons for the fee award." Hensley v. Eckerhart, --- U.S. at ----, 103 S.Ct. at 1941.[4]
 
 
 30
 The principle commands more than mere ritual. From a review of the cases that have inundated this court since Lindy I,[5] however, we fear that many lawyers and some district judges believe that once a fee applicant has touched all the Lindy bases he or she is home free. They appear to think that it is only necessary to prepare a neat compilation of dates and hours, add a subjectively appealing percentage augumentation, and the fee will emerge in a readout of deceptive exactness--a computation untouched by human hands or the power of reason. As our disposition of the present case should make clear, this view is not correct. In all phases of the fee determination, the district judge must cast a critical eye on the award request.
 
 
 31
 Calculation of the lodestar provides an excellent example. Speaking through Chief Judge Seitz, we have cautioned that determining the base figure is not a mere mathematical calculation. "[T]he first inquiry of the court should be into ... how many hours were spent in what manner by which attorneys.... After determining ... the services performed by the attorneys, the district court must [then] attempt to value those services." Lindy I, 487 F.2d at 167 (emphasis added). This formulation suggests a twin inquiry into reasonableness: a reasonable hourly rate and a determination of whether it was reasonable to expend the number of hours in a particular case.
 
 
 32
 The Supreme Court also has emphasized the importance of the lodestar determination:
 
 
 33
 "The most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.... The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.
 
 
 34
 The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.' [Citation omitted.] Cases may be overstaffed, and the skill and experience of lawyers vary widely. [The district courts] should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."
 
 
 35
 Hensley v. Eckerhart, --- U.S. at ----, 103 S.Ct. at 1939-40.
 
 
 36
 Moreover, it should be noted that the lodestar computation is a two-edged sword. A fee applicant cannot demand a high hourly rate--which is based on his or her experience, reputation, and a presumed familiarity with the applicable law--and then run up an inordinate amount of time researching that same law. Double dipping, in any form, cannot be condoned. Our cases supply no authority for rewarding non-stop meter running in law offices. See Prandini I, 557 F.2d at 1020.
 
 
 37
 Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.
 
 
 38
 Finally, as the Lindy cases explain, there must be a correlation between the "hours worked" and "the total recovery." When monetary damages are awarded, the trial court must consider the relationship between the fee award and the amount of recovery. This consideration should be made both in the context of determining the lodestar and in determining whether to adjust the fee upward or downward. See Hensley v. Eckerhart, --- U.S. at ----, 103 S.Ct. at 1940. ("[O]ther considerations ... may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.' ")
 
 
 39
 Statutory authorizations of fee awards obligate unsuccessful defendants to pay, in addition to a damage recovery for the underlying violation, an attorney's fee sufficient to allow a plaintiff without adequate financial resources to litigate the matter. Care must be exercised to assure that the statutory purpose of encouraging access is not achieved at the price of a fee award so out of proportion to the severity of the defendant's violation that it amounts to an excessively punitive sanction.
 
 
 40
 A plaintiff is compensated for the wrong done him by the damage recovery. Further redress may come in the form of exemplary damages for egregious conduct or through such statutory penalties as the treble damage award in antitrust cases. The defendant, however, has not violated any duty to the plaintiff's attorney, and it is not the purpose of a fee award to allow the attorney to share in the consequences of the defendant's wrong to the plaintiff. See Berger, "Court Awarded Attorney's Fees: What is 'Reasonable'?", 126 U.PA.L.REV. 281, 318 (1977).
 
 
 41
 Congress did not intend the fee award's incentive for private enforcement of the laws to be a license for the bar to inflict punishment. Criminal sanctions are fixed by statute. Congress did not intend, in undertaking to provide plaintiffs with access, to have lawyers run up unchecked fees bearing no relationship to the severity of the defendant's underlying offense. Reasonable fees should assure the plaintiff access to the court and provide the necessary enforcement incentive; they are not, however, the appropriate vehicle for punitive sanctions.
 
 
 42
 As Judge Rosenn emphasized in Hughes v. Repko, 578 F.2d 483, 490-91 (3d Cir.1978) (Rosenn, J., concurring), the district court must take a hard look at the stakes of the litigation. If the recovery is low but important governmental interests are implicated, then a substantial fee might be justified. If, however, the case is run-of-the-mill, produces minimum benefits and only for the prevailing party, then the same fee reduction that would be employed by a competent practitioner in adversary cases should be applied by the district court. The mere fact that a fee is authorized by statute does not empower the courts to set extravagant or disproportionate fees. The key word is "reasonable" and that means in relation to the main litigation. "Billing judgment" is a consideration well known to the responsible bar; it should not disappear when the courts are setting statutory fees.
 
 
 43
 It should not be necessary to remind the bar that restraint is in its own best interest. The legislative bodies that authorize fees may undertake to limit them as well.[6] In insisting on moderation, the courts do not disserve the bar, but reassure the public that excesses will not be countenanced and, therefore, ill-advised regulatory legislation is unnecessary.
 
 IV
 
 44
 Measured against these precepts, and having concluded that as a matter of law the evidence was insufficient to justify a bonus of nearly 100% over the lodestar, we will vacate the judgment of the district court as to counsel fees and remand these proceedings with a direction that the district court enter an attorney's fee award of $10,200 in addition to the uncontested award of expenses. The judgment in favor of the plaintiff on the ERISA claim will be affirmed.
 
 
 
 *
 Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation
 
 
 [1]
 Because defendants did not question this item, we need not pass on it
 
 
 [2]
 For example, in the list of cases assigned to the panel for disposition during this sitting, three appeals contested attorney's fee awards: Inmates of The Allegheny County Jail v. Pierce, 716 F.2d 177 (3d Cir.1983); Secretary of Labor v. United Steelworkers of America, 720 F.2d 666 (3d Cir.1983); and the case sub judice
 
 
 [3]
 Kresky concerned an attorney's fee award in an antitrust case. The fee petition requested an award of $106,992.27 and the district court allowed $28,249.25. In setting the fee, the district court reduced both the hours of service and the rate requested, and also refused any augmentation of the lodestar. The panel found no abuse of discretion in either the reduction of the hourly charge or the refusal to augment the lodestar. The panel reversed, however, on the district court's reduction of the hours of service reasonably spent by counsel. The trial court had refused to allow 57 of the 67.3 hours spent by counsel in travel time between his office in Philadelphia and the trial site in Pittsburgh. The panel concluded that, as a matter of law, the reduction was unwarranted on the facts of that case. Kresky, at 217-218. The trial court had also reduced the hours requested for trial preparation from 315.6 to 157.8 and the hours requested for preparation of the fee petition from 23.9 to 10, and allowed "ministerial work" to be compensated only at $15.00 per hour. As to each of these, the panel took issue with the district court's determination and remanded
 
 
 [4]
 Our broad Lindy formulation includes all the considerations set forth in leading cases from other circuits. As the Supreme Court noted in Hensley v. Eckerhart, --- U.S. at ----, n. 3, 103 S.Ct. at 1937 n. 3, the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, makes reference to the factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974):
 "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."
 See Sen.Rep. No. 1011, 94th Cong., 2d Sess. 6, reprinted in 1976 U.S.Code & Adm.News 5908, 5913.
 
 
 [5]
 Other published opinions of this court citing the Lindy decisions are reported at: Pawlack v. Greenawalt, 713 F.2d 972 (3d Cir.1983); Dougherty v. Lehman, 711 F.2d 555 (3d Cir.1983); Goldhaber v. Foley, 698 F.2d 193 (3d Cir.1983); In re Eastern Sugar Antitrust Litigation, 697 F.2d 524 (3d Cir.1982); Silberman v. Bogle, 683 F.2d 62 (3d Cir.1982); Marshall v. United Steelworkers of America, 666 F.2d 845 (3d Cir.1981), cert. denied sub nom., United Steelworkers of America v. Sadlowski, --- U.S. ----, 103 S.Ct. 52, 74 L.Ed.2d 58 (1982); Cunningham v. Federal Bureau of Investigation, 664 F.2d 383 (3d Cir.1981); Black v. Stephens, 662 F.2d 181 (3rd Cir.1981), cert. denied, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982)
 Walker v. Robbins Hose Co. No. 1, Inc., 622 F.2d 692 (3d Cir.1980); Wehr v. Burroughs Corp., 619 F.2d 276 (3d Cir.1980); Vasquez v. Fleming, 617 F.2d 334 (3d Cir.1980); Bagby v. Beal, 606 F.2d 411 (3d Cir.1979); Director, Office of Workers Compensation Programs v. United States Steel Corp., 606 F.2d 53 (3d Cir.1979); Dunn v. H.K. Porter Co., 602 F.2d 1105 (3d Cir.1979); Francois v. Francois, 599 F.2d 1286 (3d Cir.), cert. denied, 444 U.S. 1021, 100 S.Ct. 679, 62 L.Ed.2d 653 (1979); Prandini v. National Tea Co., 585 F.2d 47 (3d Cir.1978); Baughman v. Wilson Freight Forwarding Co., 583 F.2d 1208 (3d Cir.1978); Hughes v. Repko, 578 F.2d 483 (3d Cir.1978); Shlensky v. Dorsey, 574 F.2d 131 (3d Cir.1978); Wolf v. General Motors-United Auto Workers Supplemental Unemployment Benefits Plan Bd. of Administration, 569 F.2d 1266 (3d Cir.1978).
 Rodriquez v. Taylor, 569 F.2d 1231 (3d Cir.1977), cert. denied sub nom., Taylor v. Luis, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); Kutska v. California State College, 564 F.2d 108 (3d Cir.1977); Prandini v. National Tea Co., 557 F.2d 1015 (3d Cir.1977); Brennan v. United Steelworkers of America, 554 F.2d 586 (3d Cir.1977), cert. denied sub nom., United Steelworkers of America v. Sadlowski, 435 U.S. 977, 98 S.Ct. 1627, 56 L.Ed.2d 71 (1978); Richerson v. Jones, 551 F.2d 918 (3d Cir.1977); Samuel v. University of Pittsburgh, 538 F.2d 991 (3d Cir.1976); Atlantic & Gulf Stevedores, Inc. v. Director, Office of Workers' Compensation Programs, 542 F.2d 602 (3d Cir.1976); Lee v. Lee, 537 F.2d 762 (3d Cir.1976); Skehan v. Board of Trustees of Bloomsburg State College, 538 F.2d 53 (3d Cir.), cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976); Kramer v. Scientific Control Corp., 534 F.2d 1085 (3d Cir.), cert. denied sub nom., Arthur Andersen & Co. v. Mitchell, 429 U.S. 830, 97 S.Ct. 90, 50 L.Ed.2d 94 (1976).
 Pitchford v. Pepi, Inc., 531 F.2d 92 (3d Cir.1975), cert. denied, 426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976); In re Meade Land & Development Co., 527 F.2d 280 (3d Cir.1975); Securities and Exchange Commission v. Aberdeen Securities Co., 526 F.2d 603 (3d Cir.1975); NBO Industries Treadway Companies, Inc. v. Brunswick Corp., 523 F.2d 262 (3d Cir.1975), cert. denied, 429 U.S. 1090, 97 S.Ct. 1099, 51 L.Ed.2d 535 (1977); Walter v. Netherlands Mead N.V., 514 F.2d 1130 (3d Cir.), cert. denied, 423 U.S. 869, 96 S.Ct. 133, 46 L.Ed.2d 99 (1975); Estien v. Christian, 507 F.2d 61 (3d Cir.1975); Merola v. Atlantic Richfield Co., 493 F.2d 292 (3d Cir.1974), appeal after remand, 515 F.2d 165 (3d Cir.1975).
 
 
 [6]
 Indeed the statutes authorizing attorney fees against the United States and federal agencies already have set maximum hourly limits. Equal Access to Justice Act, Pub.L. No. 96-841, title II, 94 Stat. 2325 (codified at 5 U.S.C. Sec. 504 and 28 U.S.C. Sec. 2412). Fees in excess of $75.00 per hour are not to be awarded in the absence of special circumstances. 5 U.S.C. Sec. 504(b)(1)(A)(ii); 28 U.S.C. Sec. 2412(d)(2)(A)(ii). Attorneys handling tort recoveries against the government under the Federal Torts Claims Act are limited to 25% of a judgment or 20% of a settlement, and those who charge or receive higher amounts are subject to criminal sanctions. 28 U.S.C. Sec. 2678 (1976). The scale set nearly two decades ago under the Criminal Justice Act of 1964, 18 U.S.C. Sec. 3006A(d) (1976), is conceded to be only partial compensation, but nonetheless has been so devastated by inflation that today it fails to meet the goal set at the time of its enactment. See Berger, "Court Awarded Attorneys Fees: What is 'Reasonable'?", 126 U.PA.L.REV. 281, 312-13 n. 131 (1977)
 Modern legislatures that might undertake to regulate fees would not be exercising novel authority. In 1799, the New Jersey legislature enacted the Act to Regulate Fees, providing a schedule of maximum attorney's fees. For preparation of a plea or pleading, $.70 was allowed; for arguing or trying a case, $2.00. In Pennsylvania's Court of Common Pleas, fees were fixed in 1795 at $4.00 for every suit prosecuted to judgment. For filing a suit and entering an appearance in a case ultimately settled, the amount was $1.67. Delaware passed An Act for Regulating and Establishing Fees in 1793. The charge for all pleadings subsequent to the declaration was $.01 per line, twelve words per line; for drawing a writ, $.40; for every appeal from the Orphans Court, $1.00. These fees are representative of those included in the statutes of the original thirteen colonies. 2 A. Chroust, The Rise of the Legal Profession in America, 252-58 (Univ. of Oklahoma Press 1965).