Robert W. GROVES, Appellant,

v.

MODIFIED RETIREMENT PLAN FOR HOURLY PAID EMPLOYEES OF the JOHNS MANVILLE CORPORATION AND SUBSIDIARIES, and Retirement Committee, Johns Manville Corporation, Appellees.

No. 85–3665.

United States Court of Appeals, Third Circuit.

Argued June 6, 1986.

Decided Oct. 15, 1986.

Martin Singer (argued), Caroselli, Spagnolli & Beachler, Pittsburgh, Pa., for appellant.

Jon Hogue (argued), Darlene M. Nowak, Titus, Marcus & Shapira, Pittsburgh, Pa., for appellees.

Before GIBBONS, BECKER and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal of a district court order denying a pension plan participant sanctions and attorney's fees in connection with what are now admitted to be violations of the participant's rights under the Employee Retirement Income Security Act, (ERISA), 29 U.S.C. §§ 1001–1461 (1985). It raises several interesting and difficult questions of administrative law and presents a number of issues regarding the proper construction of ERISA and the regulations promulgated pursuant thereto. For the reasons which follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Section 503 of ERISA, 29 U.S.C. § 1133 (1985), and regulations promulgated pursuant thereto by the Secretary of Labor, require pension plans to provide plan participants with certain information relating to the plan's denial of claims made under the plan's provisions. Plaintiff Robert Groves sought an explanation of such a denial as well as certain other information subject to these provisions, first by requesting the data from the plan and, when that request was denied, by filing suit in the United States District Court for the Western District of Pennsylvania. The district court held that Groves was entitled to the information he sought, and that determination has not been appealed. The parties are therefore agreed that one regulation, 29 C.F.R. § 2560.503–1(f), (which will also be referred to here as "subsection (f)") was violated when the Plan administrator— upon whom the regulation imposes this obligation—denied Groves's application for disability retirement benefits without articulating reasons therefor. The parties also agree that § 503 of ERISA and subsection (g) of the regulations, 29 C.F.R. § 2560.-503–1(g), (which will also be referred to here as "subsection (g)") were violated when the Plan refused to release medical records on which the denial was based.

However, Groves also requested that the district court sanction the Plan administrator under § 502(c) of ERISA, 29 U.S.C. § 1132(c) (1985), for failing to provide the desired information voluntarily. In addition, Groves also sought attorney's fees

under § 502(g) of ERISA, 29 U.S.C. § 1132(g) (1985), to recoup the cost of prosecuting his information demand before the district court. The district court denied both of these requests. Groves here appeals those denials.

We affirm the district court's determination that § 502(c) sanctions cannot be imposed upon a plan administrator for the violation of the provisions which were transgressed in this case. We reach that conclusion, however, for reasons slightly different from those relied upon by the district court.

To summarize our decision, we hold that failure to perform the duties imposed by ERISA § 503 and subsection (g), requiring the disclosure of medical records, do not render a plan administrator liable to § 502(c) sanctions because both § 503 and subsection (g) impose duties expressly and exclusively on "the plan," not upon the "plan administrator." Neither does the administrator's breach of subsection (f), by denying Groves disability benefits without articulating reasons for that denial, expose the administrator to § 502(c) sanctions. Although subsection (f) does impose a duty directly upon the administrator, and not upon the plan, § 502(c) imposes sanctions only for failure to fulfill obligations imposed by "this subchapter." We believe that the words "this subchapter" in § 502(c) refers only to violations of statutorily imposed obligations, and that the term does not embrace violations of regulations promulgated pursuant to the statute. We reach this result because we conclude that § 502(c) is a penal provision, and we have therefore been guided in our application of that provision by the doctrine that penal provisions should be leniently and narrowly construed; we have also relied upon the law governing the delegation of legislative authority to impose penalties.

On the attorney's fee issue, we hold that the district court's denial of fees was based on erroneous premises. We accordingly reverse that denial and remand to the district court for a determination of the amount due Groves under § 502(g).

## I. FACTS AND PROCEDURAL HISTORY

Appellant Robert W. Groves was an employee of the Johns-Manville Sales Corporation. On November 1, 1982, he applied for disability retirement benefits under the Modified Retirement Plan for Hourly Paid Employees of the Johns-Manville Corporation and Subsidiaries ("the Plan").[1] The Plan is administered by the Retirement Committee, which evaluates employee applications for disability retirement allowances. The Retirement Committee also holds the post of Plan Administrator for purposes of ERISA. See App. at 30–31.

As part of his application for disability benefits, Groves submitted to the Retirement Committee a disability retirement sheet that was completed by his own physician, Dr. D.F. Wahl. The sheet contained Dr. Wahl's conclusions about Groves' health and abilities and was based upon Dr. Wahl's examination and treatment of Groves. When the Plan physician, Dr. Robert Anderson, evaluated Groves's application, he found it inconclusive. He therefore requested that the Plan employ another physician to examine Groves.

In accordance with Dr. Anderson's request, the Plan employed Dr. Marvin Baker to examine Groves and to submit an evaluation of Groves's physical condition. After reviewing Dr. Baker's submission, Dr. Anderson rendered his opinion that Groves was not disabled as that term is defined by the Plan. Relying on that opinion, the Retirement Committee as the Plan administrator denied Groves's request for disability retirement benefits. The Plan administrator's letter informing Groves of this decision stated simply that his disability was "insufficient to qualify for Disability Re-

---

1. Groves was suffering from arteriosclerotic heart disease with coronary insufficiency and had undergone cardiac by-pass surgery. He also suffered from rheumatoid arthritis of the lower back. Finally, Groves had also received frostbite injuries to his fingers and knees.

tirement under the terms of the Retirement Plan." It did not explain how the Retirement Committee had reached that conclusion.

Groves appealed the denial and requested from the Plan all information that it had used in reaching its decision, including Dr. Baker's report. He also submitted additional materials describing his physical condition. Without giving an explanation of its decision or releasing any of the records that Groves had requested, the Plan denied Groves's appeal.

Groves's attorney thereupon wrote to the Plan requesting the materials that had been used as a basis for the denial decision. The Plan denied this request, asserting that the information sought consisted of (1) documents that Groves had submitted, to which he obviously already had access, and (2) medical records, which were confidential. On June 7, 1983, Groves filed this action. He claimed that by failing to state specific reasons for its denial of his disability application and by refusing to produce the records that he had requested, the Plan and its administrator had denied him both adequate notice and a full and fair review of its denial of benefits, in violation of § 503 of ERISA. Groves also sought sanctions against the Plan administrator under ERISA § 502(c), and an award of attorney's fees under § 502(g).

On August 11, 1983, apparently having reconsidered its prior position, the Plan released to Groves the documents that he had requested. This decision, however, did not end the parties' disagreement. Groves continued to insist that the Plan's initial refusal to grant his requests for information violated § 503 and accompanying regulations. He argued that these violations entitled him to another review by the Plan of his application for benefits. He also continued to press for § 502(c) sanctions, and for attorney's fees. The Plan, by contrast, continued to argue that it had not been required to release the documents Groves had sought, that it had therefore not violated § 503, and that sanctions and attorney's fees were therefore inappropriate.

Relying on our holding in *Grossmuller v. United Automobile Aerospace and Aricultural Implement Workers of America,* 715 F.2d 853 (3d Cir.1983), the district court held that the Plan's written denial of Groves's claim violated § 503 because it (1) did not specify the reasons for the denial; (2) failed to refer Groves to the pertinent provision of the Plan; and (3) did not describe any additional evidence Groves could submit to succeed on his claim. The court also found that the Plan failed to disclose the medical records that it had relied on in deciding to deny his claim for benefits, and that it had thereby deprived Groves of an opportunity for the full and fair hearing required by § 503. The Court therefore ordered the Plan to reconsider Groves's claim.

Despite its holding that the Plan had violated § 503, the district court refused to sanction the Plan administrator under § 502(c). It offered two independent reasons for this decision. First, the court concluded that § 502(c) does not apply to a violation of § 503. Second, the court reasoned that even if the failure to disclose the information required by § 503 did expose the Plan administrator to § 502(c) sanctions, the imposition of such sanctions was discretionary and that this was a case in which the district court should exercise its discretion to deny sanctions.

Finally, the district court denied Groves's request for attorney's fees under § 502(g) of ERISA. Applying *Ursic v. Bethlehem Mines,* 719 F.2d 670 (3d Cir.1983), the court found that the Plan had not acted in bad faith, that an award of fees would have minimal deterrent effect on further wrongful conduct by the Plan, and that the success of Groves's claim would not confer a benefit upon other members of the Plan. The court therefore refused to award attorney's fees.

## II.  AVAILABILITY OF SECTION 502(c) SANCTIONS

### A.  *Introduction*

Section 502(c) authorizes courts to impose sanctions on plan administrators for

failing to fulfill obligations imposed on such administrators by subchapter I of ERISA, 29 U.S.C. §§ 1001–1145 (1985). In this case those duties are imposed by § 503 and by two regulations promulgated pursuant to ERISA, 29 C.F.R. § 2560.503–1(f) and 29 C.F.R. § 2560.503–1(g). As the following discussion will explain, we hold that sanctions are unavailable here. Briefly, this is true for two reasons. First, the obligations imposed by § 503 itself and by subsection (g) are not imposed on plan administrators, and we believe that the personal liability required by § 502(c) can be imposed on plan administrators only if they fail to fulfill an obligation ERISA imposes directly upon them. Second, because § 502(c) authorizes sanctions only for failure to perform duties imposed by "this subchapter," we hold that sanctions may not be imposed on a plan administrator for his failure to fulfill obligations imposed only by regulations promulgated pursuant to ERISA. Thus while subsection (f) does impose duties on plan administrators, we believe that § 502(c) sanctions are not available for failure to fulfill those duties. This is also a second, independent reasons for holding that sanctions are unavailable for the plan's failure to comply with subsection (g).

2. Section 503 provides:
   In accordance with regulations of the Secretary, every employee benefit plan shall—
   (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
   (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.
   29 U.S.C. § 1133 (1985).

3. 29 C.F.R. § 2560.503–1(f) provides in pertinent part:
   A plan administrator ... shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
   (1) The specific reason or reasons for the denial;

### B. *The Relevant Statutory and Regulatory Provisions*

Section 503 of ERISA requires "every employee benefit plan" to (1) "provide adequate notice in writing" to persons whose benefits have been denied, "setting forth the specific reasons for such denial," and (2) afford such persons "a full and fair review" of the decision denying the claim.[2] Two of the regulations promulgated pursuant to § 503 are relevant here. The first, 29 C.F.R. § 2560.503–1(f), requires "a plan administrator" to provide a losing claimant with written notice of the denial of his claim. This notice must include (1) a statement of specific reasons for the denial, (2) reference to the pertinent plan provisions on which the denial was based, (3) a description of additional information that the claimant would need to succeed on his claim, and (4) information outlining the steps the claimant must take to obtain review of the decision.[3] The second relevant provision, 29 C.F.R. § 2560.503–1(g), requires "every plan" to establish a procedure by which claimants can appeal the denial of their claims. That procedure must include, *inter alia*, a provision that the claimants or their representatives may "review pertinent documents."[4]

   (2) Specific reference to pertinent plan provisions on which the denial is based;
   (3) A description of any additional material or information necessary for the claimant to perfect the claim and explanation of why such material or information is necessary; and
   (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

4. 29 C.F.R. § 2560.503–1(g) states in pertinent part:
   (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:

The district court correctly held that the Plan administrator violated § 503 and subsection (f) by furnishing a deficient written notice of denial. The district court was also correct in holding that the Plan violated subsection (g) by refusing to provide Groves with documents pertinent to the denial decision. The Plan has not appealed either of these determinations.

Section 502(c) provides that "[a]ny administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary ... may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day."[5] Sections 502(c) and 503 are in the same subchapter of ERISA, Subchapter I.

### C. Analysis

Groves argues that the Plan's failure to abide by the requirements of § 503 and subsection (g), as well as the administrator's breach of the duty imposed by subsection (f), entitle him to § 502(c) sanctions against the Plan administrator. Although the Plan acknowledges these violations, it contends that § 502(c) sanctions are not available in this instance. To resolve this controversy we must answer three questions concerning the applicability of § 502(c) liability to violations of § 503 and the regulations promulgated pursuant to ERISA. First, is either an explanation of

the reasons for denial of benefits or the documents used in making that determination "information" within the meaning of § 502(c)? Second, does failure to comply with the duty that § 503 and accompanying regulations impose on the *Plan* create liability for the *Plan administrator* under § 502(c)? Third, can a plan administrator be sanctioned under § 502(c) for breaching a duty imposed upon him by agency regulations, as opposed to the statute itself?

### 1. Are The Data Groves Sought "Information" Within the Meaning of § 502(c)?

Section 502(c) authorizes sanctions only for failure to provide "any information which [a plan] administrator is required by this subchapter to furnish." While acknowledging that § 503 does require it to provide Groves with what could be called information as that word is used in common parlance, the Plan urges as a threshold matter that this language encompasses neither the explanation of denial or the medical documents that § 503 entitle Groves to receive. Rather, it contends that § 502(c) sanctions can be imposed only when there has been a failure or refusal to provide certain specified documents relating to the Plan as a whole, which it calls "Plan documents." This category, the Plan contends, includes only such documents as the Plan charter, summary de-

---

(i) Request a review upon written application to the plan;
(ii) Review pertinent documents; and
(iii) Submit issues and comments in writing.

**5.** Section 502(c) of ERISA, 29 U.S.C. § 1132(c), provides:

Any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refus-

al, and the court may in its discretion order such other relief as it deems proper. 29 U.S.C. § 1132(c) (1985).

Although § 502(c) does not explicitly require that the request for information be made directly to the plan administrator, it would seem unreasonable to impose a penalty on an administrator for failure to comply with a request that was not made to him. In this case, Mr. Groves made his request to Linda Eidenmueller, Benefits Coordinator under the supervision of Edgar F. Kent, Relationships Agent for the Plan. Edgar F. Kent is one of the three persons who make up the Retirement Committee, which is the Plan administrator. App. at 30–31, 135, 137. Because the request was made to an agent of a member of the Retirement Committee, we treat Groves as having made his request to the Plan administrator.

scriptions of the Plan, and financial reports. If we were to agree with the Plan on this point, we would not continue our inquiry. Sanctions would be unavailable to Groves because the nature of the information he requested would be considered outside the ambit of § 502(c).

The words of the statute—"any information"—are very broad, however, and we find no reason to give these words anything other than their everyday meaning. An explanation of a denial of benefits and the documents used in reaching that decision certainly contain "information" as that word is commonly understood. The Plan has not called our attention to anything in the legislative history of § 502(c) which implies that the provision was intended to be read technically or narrowly, or that it was intended to apply only to the failure or refusal to release Plan documents. Neither does the Plan offer any other principled reason for limiting the words "any information" to a fraction of the data that ERISA requires the Plan to release.[6]

The district court nonetheless held that § 502(c) applies only to the failure to furnish Plan documents. In so ruling the court relied on *Pension Benefit Guaranty Corporation v. Greene*, 570 F.Supp. 1483, 1501–02 (W.D.Pa.1983), affirmed without opinion, 727 F.2d 1100 (3d Cir.), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Yet the meaning of "any information" was not at issue in *Greene*, which addressed only the question of the identity of the plan administrator under the terms of the plan instrument. *Greene* does not discuss the question whether the failure to release medical records or the failure to state the reasons a plan denied a benefits

claim were included within the scope of § 502(c). Rather, *Greene* concerned a request for a statement of vested and accrued benefits for the plan participants. The court examined the reporting and disclosure requirements contained in §§ 101 through 502 of ERISA, 29 U.S.C. §§ 1021–1132, to demonstrate that ERISA required release of this information. The *Greene* court did not state, however, that § 502(c) applied only to the failure or refusal to release the information listed in these sections.

In its brief to this court the Plan relies on *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F.Supp. 1430, 1455–57 (S.D.N.Y.1983), as support for its narrow definition of "information" in § 502(c). There it was held that § 502(c) sanctions may not be imposed for the failure to release information about past denials of benefits to other claimants. But the *Chambless* court based this holding on its conclusion that no ERISA provision required the plan to divulge such information. Here, by contrast, we have concluded—and all parties now agree—that subchapter I of ERISA requires the release of the information Groves sought. *See supra* at 114. *Chambless* is therefore of no help to the Plan here.

■ We hold that the term "any information" in § 502(c) includes the information that § 503 and its regulations required the Plan to furnish to Groves. The threshold attack on Groves's § 502(c) claim must therefore fail. The availability of § 502(c) penalties for violation of § 503 and its regulations is not thereby established, however. Next we must determine whether sanctions may be assessed against a "plan

**6.** At times the Plan's argument that § 502(c) penalties should not be imposed here simply collapses into the contention that ERISA does not require production of the information sought by Groves. See Appellee's Brief at 14. As a matter of logic an argument *a fortiori* could be made in this manner: though the Plan does not do so clearly it could be understood to be arguing that because ERISA does not entitle Groves to the materials he has sought in this action, it certainly cannot be read to penalize

those who fail to provide claimants with information of this kind.

The problem with this argument is that its premise is invalid. The district court has correctly held that § 503 of ERISA, the regulations promulgated pursuant thereto, and this circuit's precedent, see *Grossmuller, do* require production of the information Groves seeks. The Plan has not appealed that determination. The Plan's argument therefore fails.

administrator" under § 502 for the breach of a duty that the statute imposes on the "plan."

2. *Can § 502(c) Penalties be Imposed for Violation of § 503 and of 29 C.F.R. § 2560.503–1(g)?*

Section 502(c) provides for personal sanctions against plan administrators for certain breaches of their statutory duties. It does not provide for sanctions against plans. By contrast, § 503 and one of the two regulations that were violated in this case, 29 C.F.R. § 2560.503–1(g), impose duties on the plan, and not on the plan administrator. One might argue that the plan administrator is in practice responsible for releasing material under § 503, and therefore that there is no reason for the administrator to escape liability for failure to release such material. Indeed, the drafters of the regulations promulgated pursuant to § 503 seem not to have recognized a distinction between "plan" and "plan administrator" for purposes of that section. While the text of § 503 itself imposes on "every employee benefit plan" a duty to give adequate notice of a claim's denial, at least one of the regulations promulgated pursuant to § 503 states that the "plan administrator" shall provide notice containing certain specified information. *See* 29 C.F.R. 2560.503–1(f). This may well be because in practice regulation of the conduct of the plan administrator amounts to regulation of the plan.

■ We conclude, however, that the terms "plan" and "plan administrator" refer to two entirely distinct actors. The words "plan administrator" and "employee benefit plan" are terms of art under ERISA. Both are given specific meanings by ERISA's definition section, 29 U.S.C. § 1002 (1985). See §§ 1002(1), 1002(2)(A), 1002(3) and 1002(16)(A). While "plan" refers to a variety of "plan[s], fund[s], or program[s]," 29 U.S.C. § 1002(1), "plan administrator" is defined, with exceptions not relevant here, as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The reading Groves would have us adopt requires that we equate "plan" and "plan administrator," allowing "plan administrator" in § 502(c) to include "plan" as used in § 503 and subsection (g). Such a reading would "slight[ ] the wording of the statute," *United States v. Enmons,* 410 U.S. 396, 399, 93 S.Ct. 1007, 1009, 35 L.Ed.2d 379 (1973), by ignoring the detailed definitions of these two terms. Section 502(c) authorizes the imposition of sanctions against a plan administrator only for his own failures or refusals, not those of the plan. Section 503, by contrast, imposes duties only upon plans and not upon administrators. We therefore hold that § 502(c) subjects plan administrators to liability only for failure or refusal to release the information that Subchapter 1 of ERISA specifically requires plan administrators to release.[7] We therefore hold that plan administrators incur no personal liability for failure to fulfill obligations imposed by subsection (g).

3. *Can § 502(c) Penalties be Imposed for Violation of 29 C.F.R. § 2560.-503–1(f)?*

The Plan's failure to give Groves the reasons for its denial of his claim violated subsection (f), which requires plan administrators to give such an explanation. The district court referred to this regulation, although not by name, in finding that the Plan had failed to satisfy its obligations under § 503, the statute pursuant to which subsection (f) was promulgated.[8]

Subsection (f) of the regulations at issue here imposes duties directly and exclusively on the plan administrator, not on the plan. Our reasoning in part II C 2 above

---

7. Our analysis of 29 C.F.R. § 2560.503–1(f), *infra* part II C 4, is an independent reason for our denial of § 502(c) sanctions for breach of subsection (g).

8. The district court held simply that the notice provided by the Plan administrator of its decision to deny benefits was inadequate under "§ 503 and the regulations promulgated thereunder." App. at 229.

therefore poses no impediment to the imposition of § 502(c) sanctions on the plan administrator for the plan administrator's violation of subsection (f). However, § 502(c) authorizes sanctions only for the breach of duties imposed by "this subchapter." We believe that a proper construction of these words precludes the imposition of sanctions for violation of agency regulations, including 29 C.F.R. § 2560.503–1(f).

The principles of statutory construction differ markedly depending upon whether the provision at issue is penal or remedial. *See 3 Sands, Sutherland on Statutory Construction § 59.03 (1974).* Specifically, while an administrative agency has wide discretion in deciding how to implement remedial legislation, *see Steuart & Bros. v. Bowles,* 322 U.S. 398, 64 S.Ct. 1097, 88 L.Ed. 1350 (1944), it may decide to penalize specific kinds of conduct only when Congress has expressly delegated that power to the agency. Before construing § 502(c), we must therefore ascertain whether it is penal or remedial.

The distinction between penal and remedial provisions is murky at best and ephemeral at worst. Thus it has been suggested that

> the same provision may appear either penal or remedial according to the way in which different parties are affected by it. A statute which extends a benefit to one person at the expense of another will appear remedial to the former and penal to the latter.

*3 Sands, supra,* at *§ 60.03.* We note, however, that among the most important parts of the instant provision is its imposition of personal liability on the plan administrator. It is true that § 502(c) provides that the penalties paid by the administrator will be received by the complaining plan participant. From this fact we might conclude that the statute was intended as a remedy for the participant, not as a penalty for derelict plan administrators. We believe, however, that the threat of personal liability was imposed primarily because of the effect it would have on a plan administrator—inducing him to comply with the statute—and only secondarily, if at all, out of a desire to make participants whole for the "damages" they incurred as a result of the plan administrator's failure to fulfill the obligations ERISA imposes upon him. We note as well that at no time in this litigation has there been any attempt to show the extent of Grove's injury as a result of the Plan administrator's failure to provide him with the documentation to which he was entitled. If Groves had believed that the remedy in § 502(c) was supposed to compensate him for injuries, he would likely have made some attempt to demonstrate the extent of those injuries. Though it is a very close question, we believe that § 502(c)'s imposition of personal liability on plan administrators is a penal provision.

■ Given that § 502(c) is a penal provision, does it authorize the imposition of sanctions for violation of agency regulations? We think that it does not.

Arguably, by authorizing the imposition of sanctions for breach of duties imposed by "this subchapter," § 502(c) could be understood to include both the provisions of ERISA itself and the regulations promulgated pursuant to that statute. The Supreme Court addressed a similar contention long ago, however, and rejected it. The Court held instead that Congress will be understood to have authorized agencies to decide what conduct should be penalized only if the legislature has expressly granted that power. Thus in *United States v. Eaton,* 144 U.S. 677, 12 S.Ct. 764, 36 L.Ed. 591 (1892), the Court held that an administrative agency was not empowered to declare private action "a criminal offense in a citizen, where a statute does not distinctly make the neglect in question a criminal offense." *Id.* at 688, 12 S.Ct. at 767. In *United States v. Grimaud,* 220 U.S. 506, 31 S.Ct. 180, 55 L.Ed. 563 (1911), by contrast, the Court held an agency empowered to criminalize conduct because "the very thing which was omitted [in the statute at issue in *Eaton* ] has been distinctly done in the [statute here at issue] which, in terms, provides that 'any violation of the provisions of this act or such rules and regula-

tions [of the Secretary] shall be punished as prescribed in'" the penal provisions of the statute. *Id.* at 519, 31 S.Ct. at 484.

These principles were recently applied in *United States v. Seelig,* 622 F.2d 207 (6th Cir.1980), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980). That case concerned the indictment of several pharmacists for violating regulations promulgated by the Attorney General pursuant to the Controlled Substances Act. The Sixth Circuit, relying on *Eaton* and *Grimaud,* agreed with the defendants that if no part of the statute had explicitly criminalized violations of agency regulations, the indictment would have to be dismissed. 622 F.2d at 210. It is that precept which we apply in this case.

No part of ERISA grants the Secretary of Labor the power to decide that plan administrators' conduct is to be penalized. While § 503 does explicitly authorize the Secretary of Labor to promulgate regulations to implement that provision's disclosure obligations,[9] that authorization cannot be taken as the grant of power which *Eaton* and *Grimaud* hold necessary. Section 503 by its terms speaks only of the disclosure obligations of "the Plan." It does not authorize the Secretary of Labor to impose any obligations on the plan administrator. It therefore cannot be taken to authorize the Secretary of Labor to establish that certain duties of plan administrators are enforceable through the *penal* provisions of § 502(c).[10]

Because § 502(c) authorizes penalties only for breach of duties imposed by "this subchapter," such sanctions cannot be imposed for violation of an agency regulation. We therefore reject Groves's request for sanctions for the Plan administrator's fail-

ure to comply with 29 C.F.R. § 2560.503–1(f).

### 4. *The Doctrine of Lenity in the Construction of Penal Provisions Also Requires the Results Reached Here*

Because § 502(c) is a penal statute, our holdings regarding the scope of that provision are also impelled by the rule of lenity in the construction of penal provisions. *Huddleston v. United States,* 415 U.S. 814, 830–31, 94 S.Ct. 1262, 1271–72, 39 L.Ed.2d 782 (1974). The Supreme Court has instructed us that "[t]his rule of narrow construction is rooted in the concern of the law for individual rights, and in the belief that fair warning should be accorded as to what conduct is criminal and punishable by deprivation of liberty or property." *Id.* at 831, 94 S.Ct. at 1272. The above discussion has shown that there are several significant ambiguities regarding § 502(c) as applied to each of the duty-imposing provisions at issue here: § 503, subsection (f) and subsection (g). In applying § 502(c) to violations of § 503 and subsection (g), we have had to overcome substantial uncertainty regarding the relationship between the terms "plan" and "plan administrator." In applying § 502(c) to subsection (f) we have been impeded by significant uncertainty as to whether violations of "this subchapter" includes violations of regulations promulgated pursuant to "this subchapter." In each case we have concluded that § 502(c) should be construed narrowly, so that sanctions are not imposed. Because Congress has not plainly and unmistakably established that § 502(c) penalties should be applied to violations of the kind here at issue, we decline to interpret the penalty provision to embrace such violations. See *Unit-*

---

**9.** Section 503 provides that its disclosure obligations shall take effect "in accordance with regulations of the Secretary."

**10.** We do not mean to suggest that subsection (f) is invalid as beyond the scope of ERISA's grant of power to the Secretary of Labor. Section 2560.503–1, the regulation of which subsection (f) is a part, was promulgated pursuant to ERISA sections 102, 503 and 505. The last of these is a general grant

to the Secretary of Labor of power to promulgate "such regulations as he finds necessary or appropriate to carry out the provisions of" subchapter I of ERISA. 29 U.S.C. § 1135 (1985). That grant is sufficiently broad to serve as a basis for § 2560.503–1(f). We hold only that neither § 503 nor § 505 authorizes the Secretary of Labor to decide that certain conduct may be penalized.

ed States v. Gradwell, 243 U.S. 476, 485, 37 S.Ct. 407, 410–11, 61 L.Ed. 857 (1917).[11]

## III. ATTORNEY'S FEES

Groves also appeals from the court's denial of his request for an award of attorney's fees under § 502(g)(1) of ERISA. Section 502(g)(1), 29 U.S.C. § 1132(g)(1) (1985), provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." In denying an award of fees to Groves, who was a prevailing party on the disclosure issue, the district court relied on the five policy factors set forth by this court in Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir.1983):

(1) the offending parties' culpability or bad faith;

(2) the ability of the offending parties to satisfy an award of attorneys' fees;

(3) the deterrent effect of an award of attorneys' fees against the offending parties;

(4) the benefit conferred on members of the pension plan as a whole; and

(5) the relative merits of the parties' position.

The district court found three of these factors dispositive. First, because when the Plan acted it did not have the benefit of the standards later set by this court in Grossmuller, the court concluded that the Plan had not acted in bad faith. Second, the court found that an award of fees would have minimal deterrent effect because there was no evidence that in the future the Plan would refuse to comply with "the now-established requirements of full and fair review." App. at 233. Third, the court found relevant the fact that even if Groves's claim for disability benefits were eventually successful, the award would confer a benefit only upon him and not upon Plan members as a whole.

We find the district court's analysis flawed. Both its analysis of bad faith and its discussion of deterrent effect depended on the mistaken belief that § 503's requirements of "full and fair review" were unclear when the Plan acted on Groves's request for information. It is true that this court decided Grossmuller after the Plan refused to give Groves either the reasons for the denial of his claim or access to the medical records on which it had relied. It is also true that the Plan was therefore without the guidance of a judicial interpretation of § 503 when it responded to Groves's request for information.[12] But other interpretive guidance was available to the Plan. Regulations promulgated pursuant to § 503 became effective on October 1, 1977, well before Groves requested any information from the Plan. These regulations served the same function as the Grossmuller opinion: both set forth the specific actions that the more generally worded § 503 requires of plans. Indeed, the Grossmuller decision was necessary only because the plan in that case had terminated the claimant's benefits before the effective date of regulations. Grossmuller, 715 F.2d at 857 n. 4.

Moreover, in assessing the benefit conferred on the members of the Plan as a whole, the district court focused upon the wrong action. Groves is not seeking an award of attorney's fees for his administrative appeal of the denial of his claim for disability benefits. Rather, he seeks fees for litigation concerning the Plan's failure to release certain information. The outcome of the matter for which fees are sought will therefore confer a benefit on other members of the Plan who appeal a denial of benefits, because the Plan is now

---

**11.** Because § 502(c) sanctions are not available for the violation of either § 503 or the regulations promulgated thereunder, Groves cannot receive such an award. It is therefore unnecessary for us to consider the district court's discretionary reasons for declining to impose a sanction under § 502(c).

**12.** Although the district court opinion in Grossmuller had been filed shortly before Groves made his original request for disability benefits, that decision was made by the District Court for the Eastern District of Pennsylvania, while Groves's case arose in the Western District.

aware that ERISA requires the release of certain information to such persons. We have surveyed the *Ursic* factors in relationship to this case and we are convinced that none of them cuts in favor of the denial of fees.[13] We therefore conclude that fees should be awarded in this case, for the amount Groves incurred in litigating his claim for information and his demand that the Plan rehear his claim for benefits. We shall remand to the district court so that it can calculate the extent of those fees and enter judgment for Groves in that amount.

## IV. CONCLUSION

For the foregoing reasons, we shall affirm the district court's denial of § 502(c) sanctions. We shall vacate the award of attorney's fees and remand to the district court to reconsider that issue in light of this opinion.

---

**13.** As far as the other *Ursic* factors are concerned, we find meritless the Plan's contention that it believed that the concerned, medical documents were confidential. Groves, not the Plan, was the patient in question.

Since the fee award will not be borne by an individual or other entity with severely limited assets, we find no reason to be concerned about the second *Ursic* factor, the ability of the offending parties to satisfy the award.