

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-3-2005

# Koenig v. Auto Data Processing

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3112

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Koenig v. Auto Data Processing" (2005). *2005 Decisions.* Paper 274.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/274

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 03-3112, 03-3231, 04-1826, 04-1827

———————

HOWARD KOENIG; EMPLOYEELIFE.COM,

Appellees/Cross-Appellants
in Nos. 03-3231 and 04-1827

v.

AUTOMATIC DATA PROCESSING

Appellant/Cross-Appellee
in Nos. 03-3112 and 04-1826

———————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No.  99-cv-05816)
District Judge:  Honorable Katharine S. Hayden

———————

Argued June 28, 2005
Before: ROTH, RENDELL, and BARRY, <u>Circuit</u> <u>Judges</u>

(Filed      November 3, 2005            )

Herbert J. Stern [ARGUED]
Stern & Kilcullen
75 Livingston Avenue
Roseland, NJ  07068

Anthony J. Laura
Reed Smith
One Riverfront Plaza
Newark, NJ  07102

*Counsel for Appellant/Cross-Appellee*
*Automatic Data Processing*


Noel C. Crowley [ARGUED]
Crowley & Crowley
20 Park Place
Suite 206
Morristown, NJ  07960

*Counsel for Appellees/Cross-Appellants*
*Howard Koenig;*
*Employeelife.com*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

Appellees Howard Koenig and Employeelife.com ("EEL")[1] brought this suit

against Appellant Automatic Data Processing ("ADP") alleging that ADP wrongfully

denied Koenig severance benefits due under a Letter Agreement and Release

---

[1]Since commencing this action, EEL has changed its name to "Benefit America."

("Agreement") after Koenig allegedly breached the Agreement. Appellees also brought federal antitrust claims against ADP. After determining that the Employee Retirement Income Security Act ("ERISA") applied to the claims under the Agreement, the District Court granted Appellees' motion for summary judgment on these claims, concluding that the breach of the Agreement by Koenig was not material and did not justify the forfeiture of all benefits. In subsequent opinions, the District Court also (1) denied ADP's motion for reargument on the ERISA claims; (2) granted ADP's motion for judgment on the pleadings regarding the antitrust claims and denied Appellees' motion to amend the complaint; and (3) denied Koenig's motions for attorneys' fees on the ERISA claims and prejudgment interest on a stock option award, and granted Koenig's motion for prejudgment interest on a severance pay award. Both parties appealed.

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and under 29 U.S.C. § 1132(e), and we have jurisdiction under 28 U.S.C. § 1291. We will reverse the judgment entered by the District Court and remand for further proceedings.

I.

ADP hired Koenig in May 1996 as a Senior Vice President of Operations Support for the Employer Services Group, the largest of ADP's four major groups. In April 1997, Koenig was promoted to Corporate Vice President and became one of ADP's top thirty officers in a work force of approximately 37,000. As an executive, Koenig had access to the company's confidential and proprietary information regarding, inter alia, current operations and performance, new products and technology, and strategic planning.

3

In January, 1999, ADP decided to eliminate Koenig's position. Pursuant to ADP's published Severance Pay Plan ("Plan"), the parties negotiated and entered into the Agreement, which detailed the terms and conditions upon which Koenig would receive severance benefits. The benefits provided in the Agreement included, <u>inter alia</u>: (1) monthly severance payments from March 1, 1999 until February 4, 2000, provided that if Koenig obtained other employment during that time, he would receive 75% of the remaining payments in a lump sum, minus a continuing $1,000 monthly payment until February 4, 2000; (2) the right to exercise, within 15 days of the last monthly severance payment, stock options previously granted under two separate agreements dated August 11, 1995 and November 11, 1997 ("Stock Option Agreements"), with the shares offered in the former plan vesting on August 11, 1999 and the shares offered in the latter plan vesting on February 4, 2000; (3) the right to keep a number of shares obtained under two previous restricted stock agreements, with the vesting of restrictions on the first plan on June 26, 1999 and on the second plan on July 1, 1999; and (4) continued participation in ADP's pension plan, retirement and savings plan, and savings-stock purchase plan until February 4, 2000.

In consideration for these benefits, Koenig undertook certain obligations under the Agreement, including: (1) a promise to maintain monthly contact with ADP regarding the status of his employment search and to contact ADP immediately upon obtaining other employment; (2) a renewed commitment to abide by non-disclosure, non-competition, non-solicitation, and non-hire provisions Koenig agreed to in the Stock Option

Agreements;[2] (3) a promise not to disclose the terms of the Agreement or any underlying agreements to anyone other than his attorney, accountant, or tax advisor; and (4) a promise not make any disparaging statements about ADP, its employees, or its products or services.  The Agreement further provided that if Koenig breached any of its terms, "all monies to be paid by ADP under this Letter Agreement shall immediately cease, and ADP shall have, in addition to all other rights or remedies provided in law or in equity by reason of [the] breach, the right to the return of all monies paid pursuant to this Letter Agreement."  Lastly, the Agreement provided that Koenig released all claims against

---

[2]The August 11, 1995 and November 11, 1997 Stock Option Agreements contained very similar provisions.  In the November 1997 agreement, the "non-competition" clause provided, in relevant part, that for at least twelve months after his employment with ADP, Koenig would not "directly or indirectly, become or be interested in, employed by, or associated with in any capacity, any person, corporation, partnership or other entity whatsoever engaged in any aspect of ADP's businesses or businesses ADP has formal plans to enter on the date [he] cease[s] to be an ADP employee, in a capacity which is the same or similar to any capacity in which [he] was involved during the last two years of . . . employment by ADP."  The "non-disclosure" clause provided, in relevant part, that during and after his employment, Koenig would not "use, or disclose to any Person any confidential information, trade secrets and proprietary information of ADP, its vendors, licensors, marketing partners or clients, learned by [him] during [his] employment and/or any of the names and addresses of clients of ADP."  The "non-solicitation" clause provided, in relevant part, that during the non-competition period, Koenig would not, on his behalf or on behalf of another, "directly or indirectly, solicit, contact, call upon, communicate with or attempt to communicate with any Person which was a client or a bona fide prospective client of ADP before the Termination Date . . . ."  The "non-hire" clause provided in relevant part that during the non-competition period, Koenig would not "directly or indirectly, hire, contract with, solicit or encourage to leave ADP's employ any ADP employee, or hire or contract with any former ADP employee within one year after the date such person ceases to be an ADP employee."  Both Stock Option Agreements also contained a choice of law clause providing that each was to be "governed by, and construed in accordance with, the laws of the State of New Jersey."

5

ADP existing as of the date of the Agreement arising out of or related to his employment and termination thereof.

Less than a month after he was terminated from ADP, Koenig accepted an offer of employment from SRA International, Inc. Although Koenig was on SRA's payroll from April 5, 1999 until August 15, 1999, he did not contact ADP regarding this employment. While employed at SRA, Koenig also accepted employment as the Chief Executive Officer of Pointment, Inc., starting on June 21, 1999. Koenig also did not contact ADP regarding this employment. In August 1999, Pointment announced in a press release that it was changing its name to EmployeeLife.com, Inc. ("EEL") and that Koenig, its CEO, had been previously employed by ADP. ADP did not learn of Koenig's employment with EEL until September 1999, when it discovered EEL's website and alleged that a number of the materials contained on the site had been developed by ADP. Shortly thereafter, ADP cut off Koenig's financial and stock option entitlements under the Agreement in light of Koenig's alleged breach.

On December 13, 1999, Koenig and EEL brought this action against ADP alleging: (1) Sherman Act violations under 15 U.S.C. §§ 1 and 2; (2) ERISA violations under 29 U.S.C. § 1132 for failure to pay severance benefits; and (3) breach of contract claims to the extent that the Agreement was not governed by ERISA. ADP counterclaimed against Koenig, alleging that he had breached his obligations under various agreements with ADP.

Subsequent to the filing of this lawsuit, in a press release issued in January 2000,

EEL disclosed certain terms of the Agreement and accused ADP of violating the law. Also several months after ADP had discontinued making severance payments to Koenig, two ADP employees contacted Koenig regarding possible employment with EEL. Koenig claims that he did not hire them, but instead referred them to EEL's President. Both employees were eventually hired by EEL, though one ultimately returned to ADP after he was offered a higher position and increased salary.

## II.

The District Court granted Koenig's motion for summary judgment on the ERISA claims. The Court determined that ERISA governed Koenig's claims because they arose out of the Agreement and the Agreement was entered into pursuant to the Plan, which was a welfare benefit plan under ERISA, 29 U.S.C. § 1002(3). Koenig v. Automatic Data Processing, No. 99-5816, slip op. at 23 (D.N.J. Apr. 3, 2002) ("April 3, 2002 Opinion"). The Court rejected ADP's argument that its action regarding Koenig's severance benefits was reviewable under an "arbitrary and capricious" standard, because ADP's action did not involve the discretionary award of benefits, but, rather, compliance with an agreement setting forth the terms of the severance benefits.

Then, the Court applied New Jersey law in assessing the validity of ADP's and Koenig's claims under the Agreement and the Stock Option Agreements. The Court proceeded to analyze specific ways in which ADP claimed Koenig breached the agreements, and determined that, based upon standard principles of law or facts of record, Koenig had not breached either the non-compete or the non-hire provisions of the Stock

7

Option Agreements, nor had he violated the confidentiality provision of the Agreement.[3]

The District Court then turned its attention to ADP's claim that Koenig failed to keep ADP apprised of his employment status or to provide written notice to ADP upon obtaining employment with SRA and Pointment, a breach of ¶ 6 of the Agreement. Id. at A35. The Court applied New Jersey contract law to "fill in gaps in ERISA," id. at 38, and concluded that ADP's "sweeping and absolute denial of all of Koenig's benefits in the stipulated damages clause [¶ 8(d) of the Agreement] d[id] not reasonably exact damages in relation to the breadth of Koenig's breach." Id. at 39. Because the Court found that the stipulated damages clause enabled ADP to cease all of its obligations and seek reimbursement for any benefits provided after any breach, regardless of its severity, the Court concluded that it was an invalid penalty clause. Id. at 40. Determining that Koenig's breach did not go to the essence of the contract and was not a material breach, the Court held ADP's total repudiation of its responsibilities and demand for reimbursement to be unreasonable. Id. at 40-41. The Court thus denied ADP's motion for summary judgment and granted summary judgment to Koenig, restoring to him the benefits already received, the remaining unpaid monthly severance benefits, and the value of remaining stock options. Id. at 41-42.

---

[3]Although in the Background section of its opinion the District Court labels ¶ 4 of the Stock Option Agreements the "Non-Hire Clause," Koenig v. Automatic Data Processing, No. 99-5816, slip op. at 5 (D.N.J. Apr. 3, 2002), in its Discussion, the Court refers to this provision as the "non-solicitation clause." Id. at 31. We adopt the District Court's original labels and refer to ¶ 4 of the Stock Option Agreements as the "non-hire provision" and ¶ 3 of the agreements as the "non-solicitation provision."

Thereafter, in an Opinion and Order dated June 27, 2002, the District Court denied ADP's motion for reargument, reinforcing its previous ruling that a de novo standard of review was applicable in interpreting the Agreement, but also refusing to reconsider its application of New Jersey law to evaluate the non-competition provision. Koenig v. Automatic Data Processing, No. 99-5816, slip op. at 2 (D.N.J. Jun. 27, 2002) ("June 27, 2002 Opinion").

In a later Opinion and Order dated June 30, 2003, the District Court granted judgment on the pleadings to ADP on Koenig's antitrust claims, concluding that Koenig had not demonstrated: (1) antitrust injury (i.e., injury to competition rather than competitors); (2) that ADP had engaged in illegal, concerted action; (3) an adequate description of the relevant market; or (4) that ADP attempted to monopolize a relevant market. Koenig v. Automatic Data Processing, No. 99-5816, slip op. at 4-11 (D.N.J. Jun. 30, 2003) ("June 30, 2003 Opinion"). The Court also denied Koenig's motion to amend the complaint.

As a final matter, in an Order and Opinion dated February 25, 2004, the District Court denied Koenig's motion for an award of attorneys' fees under ERISA. The Court concluded that Koenig had failed to comply with Local Civil Rule 54.2(b), which requires that "[a]pplications for the allowance of counsel fees shall include an affidavit describing all fee agreements and setting forth the amount billed to the client for fees and disbursements and the amount paid." Koenig did not adequately describe the fee agreement he had with EEL stating only that EEL "provisionally paid" all his attorneys'

9

fees. Koenig v. Automatic Data Processing, No. 99-5816, slip op. at 2 (D.N.J. Feb. 25, 2004) ("February 25, 2004 Opinion").

The parties press errors as to certain of the District Court's rulings. ADP urges that: (1) the District Court improperly applied New Jersey law and, as a result, improperly restored benefits to Koenig notwithstanding his clear breach of the Agreement, and (2) the District Court erred in applying a de novo standard rather than limiting its review of ADP's conduct to an "arbitrary and capricious" standard under ERISA. Koenig argues, on cross-appeal, that: (1) the District Court improperly dismissed ADP's antitrust complaint and denied leave to amend, (2) the District Court erred in denying prejudgment interest, and (3) the District Court erred in denying plaintiffs' application for counsel fees based on the violation of a local rule.

### III.

"We exercise plenary review over summary judgment and we apply the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000). To affirm the grant of summary judgment, we must be convinced that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law when the facts are viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c). We exercise plenary review over the District Court's grant of a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988). We review the District Court's denial of leave to amend a complaint for abuse of

10

discretion.  <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1413 (3d Cir. 1993).

IV.

**A.      Appeal**

      <u>1.</u>      <u>Application of State Law to ERISA Claims Regarding Breach of the</u>

                  <u>Agreement</u>

In order to determine whether the District Court applied the correct legal principles, we must work our way through the nature of the ERISA claim at issue here. "ERISA recognizes two types of employee benefit plans: 'employee pension benefit plans,' and 'employee welfare benefit plans.'  29 U.S.C. § 1002(3) (1988).  Severance pay plans are classified under the statute as welfare benefit plans.  29 U.S.C. §§ 186(c), 1002(1)(B)."  <u>Deibler v. Local Union 23</u>, 973 F.2d 206, 209 (3d Cir. 1992).  As we indicated in <u>Taylor v. Continental Group</u>, "[s]everance plans are often similar to employment contracts, whose interpretation requires determining the intent of both contracting parties."  933 F.2d 1227, 1232 (3d Cir. 1991) (citing <u>Firestone Tire & Rubber Co. v. Bruch</u>, 828 F.2d 134, 145 (3d Cir. 1987), <u>rev'd on other grounds</u>, 489 U.S. 101 (1989)).  The severance plan before us has the trappings of a "top hat" plan, which is defined under ERISA as "a 'plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly trained employees.'  29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1)."  <u>Miller v. Eichleay Eng'rs, Inc.</u>, 886 F.2d 30, 34 (3d Cir. 1989); <u>see also</u> <u>Goldstein v. Johnson & Johnson</u>, 251 F.3d 433, 442 (3d Cir. 2001) ("[Top hat] plans are

11

intended to compensate only highly-paid executives, and the Department of Labor has expressed the view that such employees are in a strong bargaining position relative to their employers and thus do not require the same substantive protections that are necessary for other employees. We have held that such plans are more akin to unilateral contracts than to the trust-like structure normally found in ERISA plans.") (citations omitted). At least one federal appellate court has construed this definition broadly to cover a severance plan that included a contractual agreement that was individually negotiated between the employer and an employee in a relatively strong bargaining position and conferred benefits upon both parties. See Duggan v. Hobbs, 99 F.3d 307 (9th Cir. 1996) (concluding that where a non-executive employee exerted influence over the design and operation of his severance agreement, through negotiations involving attorneys, to become the only employee ever to receive severance benefits, there was no reason not to broadly construe the agreement as a top hat plan, which is exempt from the trust-like provisions of ERISA and generally construed as a contract). Whether or not the plan at issue qualifies as a top hat plan, courts have determined that plans and agreements exhibiting these features are governed by ERISA and should be construed under the federal common law of contract. See, e.g., Bock v. Computer Assocs. Int'l, Inc., 257 F.3d 700, 704 (7th Cir. 2001) (explaining that with respect to individual severance agreements that are contractual in form, confer benefits on both employer and employee, and are distinguishable from vested benefits under a pension plan, "[i]t has been uniformly held that general principles of contract law–under the federal common law that

12

guides interpretation of ERISA plans–are to be applied to the interpretation of the language of such severance agreements") (citing Anstett v. Eagle-Picher Indus., Inc., 203 F.3d 501, 503 (7th Cir. 2000) ("the claim for separation benefits [under this ERISA plan] is really a claim to enforce a contract") (citation omitted); Grun v. Pneumo Abex Corp., 163 F.3d 411, 419 (7th Cir. 1998) ("we construe [the severance compensation agreement] in accordance with the federal common law under ERISA and general rules of contract interpretation"); Collins v. Ralston Purina Co., 147 F.3d 592 (7th Cir. 1998); Murphy v. Keystone Steel & Wire Co., 61 F.3d 560 (7th Cir. 1995); Hickey v. A.E. Staley Mfg., 995 F.2d 1385 (7th Cir. 1993); Taylor, 933 F.2d at 1232-33)); see also In re New Valley Corp., 89 F.3d 143, 149 (3d Cir. 1996) ("Top hat plans are . . . governed by general principles of federal common law.  Here, that law is the federal common law of contract.") (citation omitted).

Here, there is no doubt that ADP's Severance Pay Policy qualifies as a severance pay plan governed by ERISA.  29 U.S.C. §§ 186(c), 1002(1)(B).  Further, the Agreement arising from the Plan was contractual in form.  It was negotiated by the parties, presumably at arm's length given Koenig's executive status, and it included an exchange of obligations and benefits between the parties.  Consequently, it is clear from the above-cited cases that, regardless of whether or not the Agreement constitutes a top hat plan, it is to be construed under the federal common law of contract.

Accordingly, ADP's argument that the District Court applied the wrong law in construing the Agreement is well taken.  Although the District Court recognized that the

13

Agreement was governed by "general contract principles," April 3, 2002 Opinion, at 24, the Court did not cite or apply federal common law in its discussion of whether Koenig's alleged breaches of the Agreement and whether any such breaches were "material." Instead, without explanation, the Court applied New Jersey law, citing opinions by the Supreme Court of New Jersey and federal courts construing New Jersey law in diversity cases, and adhered, specifically, to New Jersey law principles of "forfeiture" in denying ADP the right to withhold benefits as the Agreement provides by its terms. Moreover, the District Court failed to consider whether the issue of materiality is a fact issue under federal law and, therefore, not appropriate for summary judgment.

It is true that if there is no established federal common law on a given issue, the Court may consult state law, including the law of the forum state, as a guide to fashioning a rule that is consistent with the policies underlying the federal statute in question. See, e.g., Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1257 n.8 (3d Cir. 1993) ("Firestone authorizes the federal courts to develop federal common law to fill gaps left by ERISA. 489 U.S. at 110 . . . . In developing federal common law, we can, of course, look to analogous state law rules, 'as long as [the] state law is consistent with the policies underlying the federal statute at issue.'") (citing Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown, 897 F.2d 275 (7th Cir.) (en banc), cert. denied, 498 U.S. 820, 112 L. Ed. 2d 41, 111 S. Ct. 67 (1990)). However, the District Court's opinion does not set forth its reasoning, nor do we have assurance that New Jersey law should necessarily serve as a guide. Because we cannot be sure that the District Court would have arrived at

14

the same conclusion if it had applied federal common law, or established an appropriate rule of federal law to govern in the absence of one, we will reverse the judgment and remand for the Court to interpret the Agreement under the federal common law in the first instance.

2.      Standard of Review

ADP's argument that the District Court erred in construing the Agreement de novo without deferring to ADP's interpretation as the administrator of the plan is unavailing, as ADP's action did not involve a decision regarding whether to award benefits, but rather compliance with the Agreement detailing the provision of benefits.  We find the District Court's conclusions on this point in its June 27, 2002 Opinion and Order denying ADP's motion for reargument to be sound.  See Taylor, supra; June 27, 2002 Opinion, at 6.

**B.      Cross-Appeal**

1.      Antitrust Claims and Denial of Amendment to the Complaint

Koenig cross-appeals from the District Court's grant of judgment on the pleadings to ADP on the antitrust claims and the denial of Koenig's motion to amend the complaint. However, we find the District Court's opinion of June 30, 2003 to adequately explain and fully support its order and we believe it unnecessary to offer additional explanations and reasons, as the District Court opinion was thorough and comprehensive.  Therefore, essentially for the reasons set forth in the District Court's opinion, we will affirm the grant of judgment on the pleadings to ADP and the denial of Koenig's motion to amend the complaint.

15

2.      Prejudgment Interest

Koenig urges that the District Court should have awarded prejudgment interest on the value of his stock options. The District Court awarded Koenig a money judgment based on the value of the stock on the date he would have exercised the options, but declined to award prejudgment interest, reasoning that a determination of whether Koenig would have liquidated his stock on that date would be speculative and, further, ADP was not unjustly enriched by retaining shares of its own stock. Koenig urges that interest is necessary to make him whole. If on remand the District Court again awards Koenig relief, we will not disturb its decision, in its discretion, to deny prejudgment interest. See Taxman v. Board of Educ., 91 F.3d 1547, 1566 (3d Cir. 1996) ("The matter of prejudgment interest is left to the discretion of the district court.") We understand the District Court's view that a remedy that would restore the stock option value as of the date of exercise necessarily involves some speculation as it cannot be known when Koenig would have liquidated the stock. Given this variable, calculating an award with "mathematical precision" is impossible, Eazor Express, Inc. v. Int'l Bhd. of Teamsters, 520 F.2d 951, 973 (3d Cir. 1975), and we cannot say that the District Court abused its discretion in its decision to fashion an award without prejudgment interest after accounting for this variable and considering the policies underlying such a decision. See Fotta v. Trs. of the UMW Health & Ret. Fund of 1974, 165 F.3d 209, 212 (3d Cir. 1998) (explaining that award of prejudgment interest is based on consideration of making the claimant whole and preventing unjust enrichment). Accordingly, we will not require that

16

on remand the District Court modify this aspect of its ruling if Koenig is again successful.

### 3. Attorneys' Fees

Koenig also objects to the District Court's denial of attorneys' fees under ERISA based upon the New Jersey local rule requiring complete disclosure of all fee agreements in applications for the allowance of counsel fees. While the normal standard of review of fee determinations is abuse of discretion, we have announced a more exacting review of ERISA fee awards, given the need of the Court to analyze the factors we set forth in Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). See, e.g., Anthuis v. Colt Indus. Operating Corp., 971 F.2d 999, 1012 (3d Cir. 1992) (explaining that in reviewing a District Court's decision regarding the award of counsel fees in an ERISA case "we must require that, in each instance in which the district court exercises its fee-setting discretion, it must articulate its considerations, its analysis, its reasons and its conclusions touching on each of the five factors delineated in Ursic"). Here, the District Court super-imposed a local rule onto the otherwise federally mandated analysis, and did not engage in the latter inquiry. While we recognize the right of local courts to monitor fee arrangements as between attorneys and clients, we do not find this policy to be sufficient to overcome the policy for awarding fees as a matter of federal law under a statutory scheme such as ERISA. While the Court should no doubt enforce compliance with such local rules, we conclude that failure to comply should not be grounds for denial, exclusive of other considerations.

On remand, should the Court again grant underlying relief to Koenig, the issue of

17

the award of fees under ERISA according to the standards laid out in <u>Ursic</u> should be reconsidered, with the Court free to mandate compliance with the disclosures required by the local rule as a further condition to that award. Accordingly, we will vacate that aspect of the Court's order and remand for further consideration.

V.

For the reasons stated above, we will AFFIRM the grant of judgment on the pleadings to ADP on the antitrust claims and the denial of Koenig's motion to amend the complaint, we will REVERSE the grant of summary judgment to Koenig on the ERISA claims, the denial of Koenig's motion for prejudgment interest on the stock options award, and the denial of Koenig's motion for attorneys' fees, and we will REMAND for further proceedings consistent with this opinion.

_____