

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-2009

# Serbanic v. Harleysville Life

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1059

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Serbanic v. Harleysville Life" (2009). *2009 Decisions.* Paper 1455.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1455

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1059
No. 08-1157
_____

CHRISTINE L. SERBANIC,

Appellant,


v.


HARLEYSVILLE LIFE INSURANCE COMPANY;
DISABILITY MANAGEMENT ALTERNATIVES LLC,

Appellee.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 07-cv-00213
District Judge: Honorable Stewart Dalzell
_____

Submitted Under Third Circuit LAR 34.1(a)
November 18, 2008

Before: Scirica, *Chief Judge* and Fuentes, Hardiman, *Circuit Judges*.

(Filed: April 30, 2009)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Christine Serbanic appeals the District Court's grant of partial summary judgment to Harleysville Life Insurance Co. (Harleysville) and Disability Management Associates LLC (DMA), and its denial of her request for prejudgment interest and attorney's fees. For the reasons that follow, we will affirm in part, and vacate in part.

I.

Because we write exclusively for the parties, we recount only those facts necessary to our decision.

Serbanic was an attorney and office manager at E. Alfred Smith & Associates (Smith) from 1996 until 2004. As part of its benefits package, Smith purchased a disability and life insurance plan (Plan) from Harleysville. The premiums were paid to Harleysville, which became part of its general treasury. Harleysville hired DMA as its agent in charge of long-term disability benefits.

In September 2002, Serbanic injured her foot in a boating accident. After 17 months of treatment, she still suffered adverse effects from her accident, and ceased working in February 2004. Serbanic applied for and received short-term disability. When her short-term disability ran out on August 16, 2004, she promptly applied for long-term disability (LTD) benefits, which were approved beginning August 17, 2004.

On March 1, 2006, DMA notified Serbanic that it was terminating her LTD benefits effective retroactively to January 1, 2006 because she did not satisfy the Plan's

2

definition of Total Disability.[1]  Serbanic appealed to the Review Board, which denied her

claim because DMA's outside doctor found that she could perform sedentary work and

thus was not under a Total Disability.

Serbanic sued Harlesyville and DMA in the District Court for the Eastern District

of Pennsylvania in January 2007, seeking reinstatement of her benefits and a

determination that she was eligible for continuing LTD benefits.  Both parties moved for

summary judgment.  The District Court found that Serbanic was entitled to back payment

of benefits through the end of the first 24-month period, but found that Harleysville was

not required to continue paying LTD benefits thereafter.  The District Court required

Serbanic to reimburse Harleysville $16,000 for the Social Security benefits she received,

which Serbanic concedes was due to Harleysville under the Plan.

Serbanic filed this timely appeal.

II.

Our review of a grant of summary judgment is plenary.  *Atkinson v. Lafayette

Coll.*, 460 F.3d 447, 451 (3d Cir. 2006).  The District Court had jurisdiction pursuant to

---

[1]Under the Plan, to be considered "totally disabled" for the first 24 months, Serbanic would have to be "prevented by Disability from doing all the material and substantial duties of [her] own occupation."  For the next 24 months, to be considered "totally disabled" she would have to be "prevented by Disability from doing any occupation or work for which [she is] or could become qualified by: (1) training; (2) education; or (3) experience."  Thus, at the time Harleysville stopped payment – 18 months after she qualified for LTD benefits – Serbanic was only required to meet the "own occupation" standard.

28 U.S.C. § 1331 because this suit was authorized by ERISA, 29 U.S.C. § 1132(a)(1)(B). We have jurisdiction pursuant to 28 U.S.C. § 1291.

The District Court first had to determine the appropriate standard of review. It is well established that, in a § 1132(a)(1)(B) benefit claim under ERISA, the reviewing court must apply an arbitrary and capricious standard of review when the plan administrator is under a conflict of interest because it has the authority to interpret the terms of the plan, and will pay benefits out of its own pocket. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). The District Court, however, relied on our precedent in *Pinto v. Reliance Standard Life Insurance Co.*, 214 F.3d 377 (3d Cir. 2000), which requires the use of a sliding scale to determine the level of arbitrary and capricious review to apply when a party is under a conflict of interest. *Id.* at 378, 383. In doing so, the District Court applied a standard "much closer to full-bodied heightened arbitrary and capricious [review]."

Although *Pinto* has been superseded by *Metropolitan Life Insurance Co. v. Glenn*, 128 S. Ct. 2343 (2008), we agree with the District Court's use of heightened review. *Metropolitan Life* reaffirmed the four factors set forth in *Firestone*,[2] and held that a conflict of interest is but one factor among many that a reviewing court must take into

---

[2]The four factors of *Firestone* require: (1) that in determining the appropriate standard of review, a court should be guided by principles of trust law; (2) principles of trust law require courts to review a denial of plan benefits, under a de novo standard unless the plan provides to the contrary; (3) where the plan provides to the contrary by granting "the administrator discretionary authority to determine eligibility for benefits," a deferential standard of review is appropriate; and (4) if a benefit plan gives discretion to an administrator who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. *Firestone*, 489 U.S. at 109, 115.

account in determining the level of heightened review to apply. The Supreme Court acknowledged that it did not set out detailed instructions on how to apply this factor analysis. *Metropolitan Life*, 128 S. Ct. at 2348. The court explicitly stated, however, that:

> We do not believe *Firestone*'s statement implies a change in the standard of review, say, from deferential to de novo review. Trust law continues to apply a deferential standard of review to the discretionary decisionmaking of a conflicted trustee, while at the same time requiring the reviewing judge to take account of the conflict when determining whether the trustee, substantively or procedurally, has abused its discretion. . . . We see no reason to forsake *Firestone*'s reliance upon trust law in this respect.

*Id.* at 2350. We find that under *Metropolitan Life*, heightened review was appropriate here.

In *Metropolitan Life*, the Supreme Court upheld the Sixth Circuit's use of heightened review because of:

> (1) the conflict of interest; (2) MetLife's failure to reconcile its own conclusion that [the claimant] could work in other jobs with the Social Security Administration's conclusion that she could not; (3) MetLife's focus upon one treating physician report suggesting that [the claimant] could work in other jobs at the expense of other, more detailed treating physician reports indicating that she could not; (4) MetLife's failure to provide all of the treating physician reports to its own hired experts; and (5) MetLife's failure to take account of evidence indicating that stress aggravated [the claimant's] condition.

*Id.*, 128 S. Ct. at 2348.

Here, there was a definite conflict of interest. Although Harleysville hired DMA to make disbursement decisions, DMA was not independent because Harleysville retained discretion over whether to pay out Serbanic's benefits, and retained all of the funds in its

5

treasury.[3]  Also factoring into our analysis is the fact that the Social Security

Administration found Serbanic to be disabled under its definition,[4] and that one of

Serbanic's doctors stated that she was incapable of performing sedentary work.  In

making its final decision, DMA relied solely on the doctors who found that Serbanic was

not disabled, while ignoring the doctor who expressed the opposite opinion.  Taking all of

these factors into consideration, the District Court correctly applied a "much closer to

full-bodied heightened arbitrary and capricious [standard of review]," even though it

arrived at this standard using a different process than we do now.

### III.

We turn to the question of whether the District Court correctly applied the standard

of review to Harleysville's termination of Serbanic's benefits.  Under ERISA, an

administrator's claim decision "will be overturned only if it is clearly not supported by the

evidence in the record . . . ."  *Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 199 (3d Cir.

2002) (citation omitted).  No matter how strictly we apply the arbitrary and capricious

standard, "we may not substitute [our] judgment for that of the administrator's."  *Stratton*,

363 F.3d at 256.  We agree with the District Court that the termination of Serbanic's

---

[3]Harleysville signed an affidavit admitting that it had full discretion and authority to determine eligibility and construe and interpret the Plan's terms.  The affidavit also stated that all of DMA's activities in connection with Serbanic's claim were for the benefit of Harleysville, were done in order to gain the approval of Harleysville, and were paid for by Harleysville.

[4]Serbanic argues that the fact that the District Court did not consider the SSA's decision finding her disabled is reversible error.  This fact is properly considered when determining what level of deference to give to an administrator's decision.  *See Metropolitan Life*, 128 S. Ct. at 2352.  Thus it was harmless error for the District Court to not explicitly consider it because it used a heightened standard of review.

benefits was arbitrary and capricious under this more heightened standard during the first 24 months, but that Harleysville properly terminated her benefits thereafter.

During the first 24-month period that Serbanic claimed LTD benefits, she had to meet the "own occupation" standard. Regardless of whether she met this standard, Harleysville's termination of her benefits on January 31, 2006 was arbitrary and capricious because her doctors had consistently stated that she was capable of sedentary work and her condition had not changed. Thus, to abruptly discontinue the payment of benefits without any change violated the Plan's terms.

We also agree with the District Court that Harleysville could terminate Serbanic's benefits after the first 24-month period. Thereafter, Serbanic was entitled to receive LTD benefits only if she met the "any occupation" standard. Here, both of her physicians, along with the independent peer review physician agreed that Serbanic could perform sedentary work, which was consistent with her job as an attorney/office manager. Serbanic relies on the March 31, 2006 statement of her doctor that she was "unable to perform any gainful employment." This one statement, when considered alongside the detailed five-page analysis of the medical records and two supportive medical assessments, is insufficient to prove that the termination of benefits under the "any occupation" standard was arbitrary and capricious, even under the heightened standard. *See, e.g.*, *Mitchell v. Eastman Kodak, Co.*, 113 F.2d 433, 440 (3d Cir. 1997) (holding that we review the record in its entirety).

We do not suggest that a plan administrator is precluded from reconsidering an award of benefits to correct its own error, so long as the plan administrator specifically

justifies the change as the correction of an earlier mistake and the record supports that decision. Here, there is some evidence to suggest that DMA's initial award under the "own occupation" standard was improper. Nevertheless, DMA does not argue that it made a mistake in the first instance, and instead relies on the March 2006 doctor's evaluation as justification for its denial. We have explained why the March 2006 evaluation is insufficient to justify a denial of benefits and DMA has waived the argument that it erred in the first instance, since it has never raised the issue.

IV.

Although we agree with the District Court's decisions regarding Serbanic's entitlement to LTD benefits, a remand is required so the District Court can consider Serbanic's claims for prejudgment interest and attorney's fees.

Serbanic sought prejudgment interest under two of ERISA's civil enforcement provisions, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3)(B). We have explicitly stated that "interest is presumptively appropriate when ERISA benefits have been delayed." *Fotta v. Trs. of the UMW Health & Ret. Fund of 1974*, 165 F.3d 209, 214 (3d Cir. 1998). Here, because the District Court did not state its reasons for the denial, we are unable to know whether it correctly applied the presumption in favor of prejudgment interest and merely decided that it would not be appropriate in this instance.

Similarly, the District Court failed to give its reasons for denying Serbanic's request for attorney's fees. A district court has discretion to award counsel fees to either party pursuant to 29 U.S.C. § 1132(g)(1). In *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir. 1983), we identified five factors a district court should consider when deciding to

8

award attorney's fees: (1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorney's fees; (3) the deterrent effect of the offending parties to satisfy an award of attorney's fees; (4) the benefit conferred upon the members of the pension plan as a whole; and (5) the relative merits of the parties' positions.  We have held that "meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted," *see, e.g.*, *Gurmankin v. Costanzo*, 626 F.2d 115, 119-20 (3d Cir. 1980), *cert. denied*, 450 U.S. 923 (1981), and that the mere listing of factors without further explanation and without balancing one factor against another is insufficient for meaningful appellate review.  *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973).  In *Anthius v. Colt Indus. Operating Corp.*, 971 F.2d 999 (3d Cir. 1992), the district court denied a request for counsel fees with a one sentence statement that referred to two of the *Ursic* factors but was silent as to the remaining three.  We reversed, finding that "in each instance in which the district court exercises its fee-setting discretion, it must articulate its considerations, its analysis, its reasons and its conclusions touching on each of the five factors delineated in *Ursic*." *Id.* at 1012.  The District Court failed to do so here, and therefore we must vacate and remand for proper consideration of this issue.

For the foregoing reasons, we will affirm in part, and vacate in part the judgment of the District Court and remand the case for further proceedings consistent with this opinion.